[Crim. No. 324. Third Appellate District.—April 29, 1907.]

## CHARLES W. KITTS, Petitioner, v. SUPERIOR COURT OF NEVADA COUNTY, and F. T. NILON, Judge, Respondents.

CRIMINAL LAW—INDICTMENT—VALIDITY—DISQUALIFICATION OF GRAND JURORS.—The validity of an indictment is not affected by the fact that one of the grand jurors was disqualified because he had served as and been discharged as a juror in the superior court within one year, nor by the fact that two others were disqualified because they were not assessed upon the last assessment-roll of the county.

ID.—CONSTRUCTION OF PENAL CODE—DISQUALIFICATION OF GRAND JURORS —GROUNDS OF MOTION TO SET ASIDE INDICTMENT.—The disqualifications of individual grand jurors are those prescribed in section 896 of the Penal Code, and do not include the disqualifications of jurors generally urged in this case, and prescribed in the Code of Civil Procedure; and under the maxim *"Expressio unius est exclusio alterius,"* it seems the conclusion is warranted that a motion to set aside an indictment under section 995 of the Penal Code for disqualification of individual grand jurors is limited to the grounds specified in section 896 of that code.

ID.—NATURE OF GRAND JURY—DE JURE BODY—DISQUALIFIED GRAND JURORS ACTING UNDER COLOR OF RIGHT—PROCEEDINGS NOT VITIATED. The grand jury is a *de jure* body created by the constitution; and one who, having been regularly summoned and impaneled as a grand juror, and who exercises the duties thereof, though thereafter discovered to be disqualified by some provision of law, serves under color of right; and "upon principles of policy and justice," his acts in such capacity should not be held to invalidate the whole jury or any proceedings had by it in which he participated.

ID.—REGULAR NUMBER IMPANELED—SOLE OBJECTION TO NUMBER.—If the requisite number of grand jurors have been regularly summoned and impaneled in the first instance, no objection to number can thereafter be urged to question the validity of an indictment, except where it may appear that twelve of such jurors have not concurred in finding it.

ID.—PROHIBITION—VALIDITY OF INDICTMENT.—Whatever ground of criticism may be urged against an indictment under a general or special demurrer, where it attempts to set forth a public offense, its validity cannot be questioned under a petition for prohibition addressed to the jurisdiction of the court.

PETITION for writ of prohibition to the Superior Court of Nevada County.   F. T. Nilon, Judge.

The facts are stated in the opinion of the court.

Charles W. Kitts, and A. M. Seymour, for Petitioner.

George L. Jones, District Attorney, for Respondents.

HART, J.—The grand jury of Nevada county, on the twenty-fourth day of November, 1906, returned and caused to be filed in the superior court of that county an indictment against the petitioner for the crime of assault by means and force likely to produce great bodily injury upon the person of one Martin Shoebridge. Thereafter petitioner moved the respondents to set aside said indictment upon the grounds that certain members of said grand jury were disqualified under the law from acting as such ,and at the time of the presentation of said motion evidence was offered which it is claimed supported the charge of the disqualification of such jurors. The motion was denied by respondents, and thereupon the petitioner was required to answer the indictment.

It is claimed that by reason of the alleged disqualification of said jurors the indictment was not found, presented and filed according to the requirements of law, and that the same does not therefore confer upon respondents jurisdiction to try petitioner for the offense charged against him in said alleged indictment.

The petitioner asks that respondent be prohibited from trying him upon said alleged indictment, and commanded to desist and refrain from taking further proceedings in the case. The jurors who are alleged to have been disqualified from serving as members of said grand jury are J. H. Nile, W. H. Hughes, and E. G. Sukeforth. It is claimed that said Sukeforth was disqualified because he "had served in and been discharged as a juror by a court of record of. this state, to wit: the Superior Court of the County of Nevada, State of California, within a year of the time that he was summoned and impaneled to act as such grand juror, and within a year of the finding and filing of the said alleged indictment," and

that said Nile and Hughes were not competent to act as grand jurors for the reason that they were not assessed on ''the last assessment-roll of said Nevada County for the year 1906, on property owned by them, standing in their names, or at all.'' It is alleged that the juror Hughes is not thus assessed ''except there is an assessment on said last assessment-roll to 'Hughes Bros.,' which may or may not be property belonging to said William H. Hughes.'' It is also averred that ''said alleged indictment fails to state any public offense against your petitioner.''

As to the first proposition, that the juror Sukeforth was not competent to act as a grand juror because of having served as a juror and having been discharged as such within a year of the time that ''he was summoned and impaneled to act as such grand juror, and within a year of the finding and filing of said alleged indictment,'' it is only necessary to say that the supreme court has recently, in the case of *Ex parte Ruef*, on *habeas corpus*, 150 Cal. 665, [89 Pac. 605], ruled adversely to petitioner's contention.

In that case the court says, speaking of the same objection as is made here: ''We are of the opinion that this does not affect the validity of an indictment found by the grand jury. The Penal Code enumerates the grounds upon which an indictment may be set aside. (Pen. Code, sec. 995.) One of these grounds is 'any ground which would have been good ground for challenge to any individual juror.' Penal Code, section 896, provides for a challenge to an individual grand juror for six specific grounds *only.* The particular incompetency here relied on is not included. We think that the legislature, in declaring that persons who had been discharged as jurors within a year should not be competent, and at the same time denying to a defendant indicted by a grand jury including one or more such persons any remedy by way of motion or challenge, in effect provided that if the statutory rule prohibiting the service of such persons were not obeyed, the departure should not invalidate any indictment found.''

The point that the grand jury was not a legally constituted body because jurors Nile and Hughes were not assessed upon the last assessment-roll of the county on property belonging to them, and therefore could not return a valid indictment, cannot, we think, be maintained. The law provides that the

grand jury shall be composed of nineteen members (Code Civ. Proc., sec. 192), twelve of whom may find an indictment. (Pen. Code, sec. 940.) One of the prescribed qualifications of a grand juror is that he shall be "assessed on the last assessment-roll of the county . . . on property belonging to him." (Code Civ. Proc., sec. 198.) Of course, it is true that a person not possessing the general qualifications for a juror required by section 198, Code of Civil Procedure, is not competent to act either as a grand or petit juror in any case. Under the system in vogue in California prior to the adoption of our present constitution the only mode authorized for the inauguration of a prosecution of an ordinary felony charge was by indictment by a grand juror, a necessary prerequisite to which was a preliminary hearing of the charge by a magistrate and an order holding the accused to answer before said body. By that method of proceeding, the accused, having been held to answer, was expressly given by the law the right, and thus afforded an opportunity of interposing in open court a challenge to the panel of grand jurors or of examining them individually for the purpose of exercising any challenge of their right upon any ground prescribed by the statute to inquire into or act upon his case. Since the adoption of the present constitution, however, the procedure with regard to the initiation of prosecutions for felony is essentially different from the former manner of proceeding. Under our present system, as established by the constitution of 1879, and which it is safe to say is familiar to people generally, all offenses theretofore prosecuted by indictment may be prosecuted by information after an examination and commitment by a magistrate, or by indictment with or without such examination and commitment, as may be prescribed by law. (Const., art. I, sec. 8.) The effect of this provision of the constitution is, as may readily be seen, that an indictment by a grand jury may be found for a felony without a preliminary examination of the charge by a magistrate, and the accused, therefore, deprived of an opportunity, as formerly accorded to him, of examining the inquisitors as to their general and special qualifications to act as such before they proceed to the examination of his case. The result is, in such a case, that the accused has but one remedy, which is exercisable only

5 Cal. App.—30

after the indictment is found and filed, and is in the nature
of a motion to set it aside for certain specified reasons pre-
scribed by section 995 of the Penal Code. Among the grounds
enumerated by that section as requiring the setting aside of
an indictment is "any ground which would have been good
ground for challenge, either to the panel or to any individual
grand juror." The grounds of challenge to the panel are
set forth in section 995 and the cause of challenge to an indi-
vidual grand juror prescribed in section 896 of the Penal
Code. The incompetency of the grand juror for not possessing
the qualification mentioned in subdivision 4 of section 198
of the Code of Civil Procedure is not embraced within the
grounds prescribed in either section 995 or 896 of the Penal
Code. There can be no doubt that, under the system which
prevailed under the constitution preceding the present one, if
an examination of the grand jurors disclosed that any or all of
them were wanting in any of the general qualifications re-
quired in them by law, or by section 198 of the Code of Civil
Procedure, if at that time that section existed as now, such
juror or jurors could have been successfully challenged upon
such ground. It would seem, from adjudications of analogous
questions by the courts, that where, as in this case, a section
of the code expressly mentions certain grounds upon which
an indictment may be set aside, and said section does not in-
clude in such grounds certain grounds prescribed in another
section or code disqualifying a person from acting as a grand
juror, the section involving the grounds upon which the in-
dictment may be set aside is intended by the legislature as a
limitation of the grounds as to which an indictment may be
set aside. Certainly the rule of construction expressed by
the maxim *"Expressio unius est exclusio alterius,"* would
warrant this conclusion. But it is not necessary to base our
conclusion that petitioner's position on this point is untenable
upon this reason.

Counsel upon both sides of this case have in their briefs
elaborately, interestingly and instructively discussed all the
points which could conceivably be brought to bear upon the
main point in the case, to wit, whether, for any of the reasons
suggested by petitioner, the superior court of Nevada county
is without jurisdiction to try said petitioner under the indict-
ment of which complaint is made. But we are of opinion that

the point which is under discussion has been decided against the contention of petitioner in a number of opinions filed by the supreme court. The case of *People* v. *Simmons*, 119 Cal. 1, [50 Pac. 844], while not directly in point, is valuable, more particularly because the court adopts the reasoning and authorities cited in the case of *People* v. *Hecht*, 105 Cal. 621, [45 Am. St. Rep. 96, 38 Pac. 941]. The last-mentioned case was where a question arose as to the qualifications of certain members of a board of freeholders, elected to frame a new charter for the city and county of San Francisco. By proceedings in *quo warranto* it was attempted, not only to oust two of the elected members of the board because they had not been, as required by the constitution in such case, electors of the city for which they were elected for a period of five years preceding their said election, but to have declared invalid the entire board because, by reason of the disqualification of two of the members so elected, the full number of fifteen qualified electors had not been elected as such freeholders. The supreme court, in a characteristically able opinion by Judge Niles Searls, then a commissioner, held that under the facts as alleged in the complaint and admitted to be true by the demurrer, the two alleged disqualified freeholders were in fact disqualified and could not, therefore, act as such, on the board, but that the fact of their disqualification did not invalidate the board; that it was a legally constituted body, with full power to perform the duties designed by the constitution and for which it had been elected and organized. Among other things this learned judge says: ''An interpretation which holds that the ineligibility, or death, or unwillingness to act of a single member thus selected invalidates the entire election, would work great hardship, and tend to thwart the will of the electors in many instances, and should not be indulged unless rendered imperative by the mandate of the constitution. The same constitution (art. XI, sec. 5) provides that the legislature, by general and uniform laws, shall provide for the election or appointment in the several counties of 'boards of supervisors,' etc. Other portions of the constitution provide for a Supreme Court, 'which shall consist of a Chief Justice and six Associate Justices.' Again, 'the Senate shall consist of forty members, and the Assembly of eighty members.' It would, we think, hardly be contended

that because the constitution provides for a *board of supervisors* that an election for supervisors, in which a single member elected was disqualified, would either invalidate the election of other members, or prevent their organizing and acting as a *board*. Like considerations apply to the election of members of the senate and assembly, and to the election, organization and action of the Supreme Court." Further on in the opinion it is said: "Again, the office of freeholder is created by the constitution. It is a *de jure* office. When Hellman and Bourn were elected by a plurality of the qualified electors, received their certificates of election and qualified and participated in the action of the board, they were there under color of office and presumptively entitled to the office. They were *de facto* officers in the discharge of the duties of a *de jure* office, and as such their acts, while they remained such, were as valid and binding as those of *de jure* officers. There must be a *de jure* office to be filled before there can be a *de facto* officer. If the former exists, and the latter holds it under and pursuant to a regular commission purporting to empower him to act, his acts in such office, until his right thereto is judicially determined, the law holds upon principles of policy and justice to be valid so far as they involve the public and third parties."

An officer *de facto* is defined to be "one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons where the duties of the office were exercised: 1. . . . 2. . . . 3—under color of a known election or appointment, void because the officer was not eligible, . . . such ineligibility . . . being unknown to the public." (*State* v. *Carroll*, 38 Conn. 449, [9 Am. Rep. 409].)

We think the principles discussed in the Hecht case apply here. In fact, it is, as we have seen, so expressly declared in *People* v. *Simmons, supra*. The grand jury is a *de jure* body created by the constitution. (Const., art. I, sec. 8.) One who, having been regularly summoned and impaneled as a grand juror, and exercises the duties thereof, although thereafter discovered to be disqualified by reason of some provision of the law, serves under color of right, and "upon principles of policy and justice," his acts in such capacity should not be held either to invalidate the whole jury or any

proceedings had by it in which he participated. Any num-
ber of cases can be found to the point that where a grand
jury has been summoned and impaneled as required by law
the death of one of the members after such impanelment,
thereby reducing the number below that required by the stat-
ute, does not render invalid the jury as it remains nor vitiate
any proceedings properly coming before it. (*People* v.
*Hunter*, 54 Cal. 65.) If the requisite number, having been
regularly summoned, is sworn or impaneled as grand jurors
in the first instance, no objection as to number can be urged
questioning the validity of an indictment except where it
may appear that twelve of such jurors have not concurred in
finding it. Upon this point it is our conclusion that the fact
that jurors Nile and Hughes may not have been assessed on
the last assessment-roll of the county on property belonging
to them does not operate to invalidate the indictment. The
case of *People* v. *Leonard,* 106 Cal. 302, [39 Pac. 617],
is not an authority supporting petitioner's contention. There
the question was whether or not, when impaneling a grand
jury, and after excuses allowed there were remaining twenty
jurors from whom to select the required number, two of
whom, in reply to questions by the district attorney, declared
they were not assessed on the last assessment-roll of the
county, upon the excuse of such jurors by the court after
challenge by the district attorney, and the ordering of a spe-
cial venire for two persons from whom to complete the panel,
was the proper procedure under the provisions of the code
upon the subject. The court held that the course pursued
was regular and proper.

The third and last point relied upon is that the indictment
does not state facts sufficient to constitute a public offense.

Without passing upon the question of whether or not the
indictment might in some respects be amenable to criticism
under either a general or special demurrer, it may be said
that the offense charged therein is sufficiently set forth to
withstand attack in this proceeding.

The purpose of the remedy here sought is, like that afforded
by the writ of *habeas corpus,* solely to determine the question
of jurisdiction, and consequently the principle declared upon
a similar point in the case of *Ex parte Ruef*, on *habeas cor-
pus,* 150 Cal. 665, [89 Pac. 605], is pertinent here. In that

case the court says: "On *habeas corpus* the inquiry into the sufficiency of an indictment is limited. We think the true rule is that where an indictment purports or attempts to state an offense of a kind of which the court assuming to proceed has jurisdiction, the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into on *habeas corpus.*"

The indictment here, it may be said, certainly makes "an attempt to state an offense," and with equal certainty fully meets the test, so far as a proceeding of this character is concerned, laid down in the Ruef case.

A large array of authorities is cited by the learned counsel for petitioner in the discussion of the numerous points growing out of the main contention. The briefs on both sides are voluminous and able, showing, as we have before suggested, commendable and assiduous industry, but it would only compel unnecessary prolixity to undertake to notice all the points discussed, many of which only collaterally affect the principal question in dispute, or to enter upon the laborious task of distinguishing, as can without difficulty be done, the many cases offered in support of the contention of petitioner, from the one at bar. We have given careful attention to the record, and to the arguments, oral and written, and find no reason for entertaining any doubt that the respondents have jurisdiction to try petitioner upon the charge alleged in the indictment.

For the foregoing reasons, the order to show cause will be discharged, and the application for peremptory writ of prohibition denied.

Burnett, J., and Chipman, P. J., concurred.