[Crim. No. 669. Third Appellate District.—December 27, 1922.]

# THE PEOPLE, Respondent, v. JOHN L. COLLINS, Appellant.

[1] CRIMINAL LAW—FORGERY—SUFFICIENCY OF EVIDENCE.—In this prosecution for forgery, the verdict finding the defendant guilty of the crime as charged in the indictment is amply supported by the evidence.

[2] ID.—SUFFICIENCY OF INDICTMENT—LANGUAGE OF STATUTE.—An indictment charging the crime of forgery in the language of the statute is sufficient.

[3] ID.—INTENT TO DO WRONGFUL ACT—MANNER OF PROOF.—The intent to do a wrongful act is always provable by extraneous circumstances, that is, by some physical act or acts which, with sufficient clearness, disclose the operation of the mind with respect to the wrongful act, as, for instance, the fact that a person, without authority, signed the names of the officers of a corporation to a check is itself evidence, quite conclusive, that his intent was to prejudice or damage or defraud the corporation.

[4] ID.—PLEA TO INDICTMENT—REFUSAL OF LEAVE TO WITHDRAW BEFORE TRIAL—PURPOSE OF DEMURRER—DISCRETION WHEN NOT ABUSED.—While it would generally be not only the proper but the just course to be adopted by the trial court, where the defendant, having no counsel at the time of his arraignment upon an information or an indictment, enters a plea thereto, to set aside such plea upon the motion for the defendant before the trial is begun, for the purpose of enabling him to demur to the pleading or move to set it aside upon any ground or grounds prescribed by the statute, the refusal to do so is not an abuse of discretion, where, if the demurrer had been interposed, it would have been the duty of the court to overrule it, the pleading being sufficient.

[5] ID.—INDICTMENT—REFUSAL OF PERMISSION TO APPEAR BEFORE GRAND JURY—INSUFFICIENT GROUND FOR DISMISSAL.—An indictment is not subject to be set aside on the ground that the defendant was not permitted to appear and give testimony before the grand jury, since it is expressly provided by section 920 of the Penal Code that in the investigation of a charge against a party, such body is not bound to hear evidence for the defendant.

[6] ID.—FINDING OF INDICTMENT UPON INCOMPETENT EVIDENCE—INSUFFICIENT GROUND FOR DISMISSAL.—An indictment is not subject to be set aside on the ground that it was based on incompetent evidence, since the grounds upon which an indictment may be

set aside are expressly enumerated in section 995 of the Penal Code, and the foregoing ground is not one of them.

[7] ID.—DEFRAUDED CORPORATION—INDICTMENT AND PROOF—ABSENCE OF VARIANCE.—In this prosecution for the forgery of a check, there is no variance between the indictment and the proof as to the corporation which the defendant intended to defraud.

APPEAL from a judgment of the Superior Court of El Dorado County and from an order denying a new trial. George H. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

John L. Collins, *in pro. per.*, for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was charged by an indictment returned by the grand jury of the county of El Dorado with the crime of forgery and upon trial therefor before a jury was found guilty of the crime as so charged. The specific charge is that the defendant, with the felonious intent to prejudice, damage, and defraud the El Dorado Water Corporation, a corporation organized, etc., did, on the seventeenth day of June, 1922, make, forge, and counterfeit a certain check for two hundred dollars, payable to the order of John L. Collins and which purported to be a check drawn upon the El Dorado County Bank of Placerville and to have been signed by said corporation and R. W. Hawley, the general manager, and O. P. Fitch, the secretary-treasurer. He made a motion for a new trial and the same was denied and he thereupon was sentenced to imprisonment in the state prison, whereupon he gave notice of an appeal from the judgment of conviction and the order denying him a new trial. The defendant, who does not claim to be an attorney at law, himself conducted in his own behalf all the proceedings following the verdict of guilty returned against him and also prepared his own brief on file in this court and appeared personally before the court and orally argued the cause. He advances a number of points upon which he claims that he is entitled to a reversal of the judgment and the order. After a careful examination of these points, we

have been convinced that there is no merit in any of them. We will, therefore, give each brief consideration only and will take up, out of order, the assignment that the evidence is insufficient to support the verdict. In stating the facts, it will be understood, of course, that they are as they were shown by the evidence at the trial. The defendant appeared in the city of Placerville some time in the latter part of May and was introduced to R. W. Browne, assistant secretary of the El Dorado Water Corporation, as the representative of a Mr. Hess, between whom and said corporation a contract had been entered into whereby the former was to construct a dam for the corporation on Webber Creek in El Dorado County. The defendant was introduced to Mr. Browne as "Judge Gordon." He remained in Placerville until about the 10th of June, 1922, and during most of that period of time was in and about the offices of the corporation—in other words, made his headquarters in said offices.

It appears that prior to March, 1922, the El Dorado Water Corporation had been known as the El Dorado Water Company and that the funds of said company were deposited in the Placerville bank above referred to. The printed checks of said company at that time contained the name of the El Dorado Water Company. Some time in said month of March the El Dorado Water Corporation was organized as a corporation under the laws of the state of California and thereupon the El Dorado Water Company was transferred to said corporation. The evidence shows that the corporation known as the El Dorado Water Company was never dissolved, but that it was turned over to the El Dorado Water Corporation as the holding corporation of said company. It also appears from the evidence that, after the transfer of the El Dorado Water Company to the El Dorado Water Corporation, the latter continued to use, as a matter of convenience when making payments out of the funds of the corporation in the said bank, the printed checks of the El Dorado Water Company. The witness Browne, as assistant secretary of the corporation, had charge of the check-book and generally the business of issuing checks for the corporation. He stated that his custom was to prepare checks, when vouchers were presented, in pen and ink and then take them to Mr. R. W. Hawley, the gen-

eral manager, and O. P. Fitch, the secretary-treasurer, to be countersigned. He further stated that he often left the check-book on his desk. He would do this, so he stated, only when he was to be temporarily absent from his office and there was no one in the office whom he had reason to believe was untrustworthy; that subsequently to the departure of the defendant from Placerville it was discovered that a number of the blank checks were missing from the check-book. These were numbered 1388, 1389, 1390, 1433, 1434, and 1435, each of said checks having printed upon it the words "El Dorado Water Company." The check which is set out in the indictment as having been forged by the defendant bears the number 1435 and it was declared by the officers of the water corporation testifying in the case to be identical in all respects, so far as the printed words thereon and the size and character of the paper are concerned, with the blank checks contained in the check-book of the corporation. In this connection it may be stated that the witness Browne testified that the defendant "was shown the courtesy of the office and was often seated in the swivel chair at the desk where the check-book was kept in the daytime and there were times when I left the office and he had access to the check-book." He added that the defendant had an opportunity to remove the missing checks from the check-book and could have done so. The part of the check indicating the amount for which it was issued, in the place of having been made out in ink was filled in by means of a protectograph and it was stated by the officers of the corporation that there was no protectograph in the office of the corporation on the date on which the check was apparently issued. The name "John L. Collins" in the check was typewritten and one of the officers of the corporation testified that the character of the typewriting was the same as that produced by a typewriting machine in his office during the period of time that the defendant made his headquarters at the company's office. Both Fitch and Hawley positively testified that they did not attach or subscribe their signatures to the check in question and that they did not authorize any one to do so.

R. K. Blanchard, chief engineer and assistant secretary of the Neptune Meter Company, manufacturers of hydraulic apparatus, in New York City, who is a resident of said city,

testified that the defendant came to the offices of the establishment with which the witness was connected in New York on the twenty-seventh day of June, 1922, and, introducing himself as the purchasing agent and assistant general manager of the El Dorado Water Company of Placerville, California, after some negotiations, signed a contract with said meter company through the witness for a large quantity of water-meters; that on July 6th the defendant presented the check in question to the witness and requested him to cash the same. The witness examined the check and discovered that there was a striking similarity in the style of the signatures of Hawley and Fitch, and, having previously had his suspicion aroused as to the validity of the defendant's contract for the meters, refused to cash the check for its full amount and gave the defendant twenty dollars only and retained the check. The witness identified the check in question as the one which was presented to him by Collins as above explained.

[1] There is other testimony in the record tending to show the guilt of the defendant as charged in the indictment, but it is not necessary to recite the same or state the substance thereof herein. It is sufficient to say that a careful examination of the testimony as the same is presented here has left no doubt in our minds that the verdict is amply supported.

Such of the remaining points as we conceive should be given consideration will now be noticed in the order in which the defendant presents them in his briefs.

1. It is first contended that the court was without jurisdiction to try the defendant, because, as he asserts, the crime for which he was extradited (he having been arrested in New York) is not the crime charged in the indictment and of which he was convicted. It is argued that the law of the country is that a person who is a fugitive from justice from a certain state and domiciled in another state cannot be extradited from the latter state for a certain crime alleged to have been committed in the demanding state and then put upon trial in the latter state upon an entirely different charge. Assuming, but not conceding, that such is the law, the difficulty in the way of considering the point here is that it is not made to appear in the record that the

defendant was prosecuted for and convicted of a different offense from that for which he was extradited.

[2] 2. The objection that the indictment does not state a public offense is without foundation. We will not undertake to follow the criticisms directed by the defendant against that pleading. It is sufficient to say that it is in the language of the statute (sec. 470, Pen. Code), and is in every particular sufficient in the statement of the crime of forgery as it is defined by the section just named. In this connection, we may suggest that the contention of the defendant that the mere intent to injure and defraud a person is not and cannot be a crime is excusable on the ground that the defendant is himself not a lawyer and perhaps to no extent versed in the law, and is, therefore, unable to perceive how the mere intent to do a wrong, without committing the wrong itself, can be made a crime. The difficulty which appears to confront the defendant, though, as we judge from his briefs, is that he is unable to see how the intent to do a wrong, which is, of course, always hidden within the impalpable human mind, can be proved. [3] But the obvious answer to this proposition is that the intent to do a wrongful act is always provable by extraneous circumstances—that is, by some physical act or acts which, with sufficient clearness, disclose the operation of the mind with respect to the wrongful act. In this case, for instance, the fact that he, without authority, signed the names of the officers of the water company to the check is itself evidence, quite conclusive, that his intent was to prejudice or damage or defraud the water corporation.

[4] 3. The complaint that the court erred in refusing the application of the defendant, made before the trial of the case, to be allowed to withdraw his plea of not guilty theretofore entered so that he could demur to the indictment and also move to quash or dismiss it is without legal force. In other words, while it would generally be not only the proper but the just course to be adopted by the trial court, where the defendant, having no counsel at the time of his arraignment upon an information or an indictment, enters a plea thereto, to set aside such plea upon the motion of the defendant before the trial is begun for the purpose of enabling him to demur to the pleading or move to set it aside upon any ground or grounds prescribed by the statute, yet,

in this case, we find no justification for holding that the court abused its discretion in refusing to allow the motion of the defendant to withdraw his plea.

We have already shown that the indictment contains a sufficient statement of the offense of forgery under the statute. Even, therefore, if the demurrer had been interposed, it would have been the duty of the court to overrule it, and, consequently, it would involve a clear miscarriage of justice to send the case back upon the ground that the court had refused to permit the defendant to withdraw his plea in order to enable him to file and present his demurrer.

[5] As to the defendant's proposal or desire to move to dismiss or set aside the indictment, the record itself is not clear as to the ground upon which he intended to press the motion. The affidavits upon which the motion to set aside the defendant's plea was based merely state that the defendant was not permitted to appear before the grand jury and give testimony regarding the charge which that body was investigating as against him. In the briefs, however, the defendant declares that it was his purpose to move to quash the indictment on the ground that the grand jury based the indictment herein on incompetent testimony, contrary to the terms of section 919 of the Penal Code, providing that ''the grand jury can receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence.'' The answer to the first proposition is to be found in section 920 of the Penal Code, which expressly declares that, in the investigation of a charge against a party, ''the grand jury is not bound to hear evidence for the defendant.'' [6] The second proposition is, as stated, suggested in the briefs only, and while it is not here presented in a form to be reviewed, it may nevertheless be observed that section 995 of the Penal Code expressly sets forth the grounds upon which an indictment may be set aside, and an indictment cannot be set aside for any other reasons than those mentioned in said section. The express enumeration of the grounds upon which an indictment or information may be set aside necessarily excludes all other grounds or reasons for setting such pleading aside. The fact that a grand jury may receive incompetent evidence against a person against whom it has found an indictment, or has based such indictment, either wholly or in part, upon

incompetent evidence, does not constitute one of the grounds enumerated in section 995 upon which an indictment may be set aside. (*People* v. *Fealy,* 33 Cal. App. 605, 613 [165 Pac. 1034]. See, also, cases cited therein.)

4. It appears that before the indictment herein was found and returned by the grand jury a complaint or deposition was filed in the justice's court of the township of Placerville charging the defendant with the crime herein charged, and a warrant thereupon issued for his arrest. The defendant contends that, this course having been adopted in the first instance, it was the duty of the authorities to take him before the magistrate before whom the deposition was filed and by whom the warrant was issued and there subject him to a preliminary examination; that, because of the fact that the district attorney so proceeded in the first place, the grand jury was without authority to investigate his case and return an indictment against him, and, therefore, the indictment was not valid and was wholly insufficient to clothe the superior court with jurisdiction to try him. Of course, there is absolutely nothing in this point. We notice it merely because the defendant, who, as stated, is not an attorney at law, devotes many pages of his brief to the consideration of the point.

[7] 5. It is contended that there is a variance between the indictment and the proof, in that the check alleged to have been forged by the defendant is that of the "El Dorado Water Company," whereas the indictment alleges that the defendant made, forged, and counterfeited said check with the intent to prejudice, damage, and defraud the "El Dorado Water Corporation." Indeed, the same contention applies to the indictment itself, since the check, as pleaded, upon its face shows that it was that of the El Dorado Water Company, while the indictment charges that it was wrongfully signed and issued by the defendant for the purpose of prejudicing the El Dorado Water Corporation. The contention is untenable. As we have shown, the officers of the corporation testified that after the El Dorado Water Company was taken over by the El Dorado Water Corporation, the latter continued to use the blank printed checks which had been theretofore used by the former. In other words, said checks were, as a matter of convenience, appropriated by the El Dorado Water Corporation to its uses and pur-

poses in the transaction of its business, and, when signed by the proper officers of the El Dorado Water Corporation, constituted legal demands against said corporation and were so recognized by the bank upon which they were drawn, notwithstanding that the name "El Dorado Water Company" was printed thereon.

There are other points made by the defendant which are equally as untenable as those above considered. It would be a waste of time to give them specific attention herein. We are satisfied from an examination of the entire record that the defendant was accorded a fair and impartial trial, that, as above declared, there is plenty of evidence, direct and circumstantial, to sustain the verdict and that there is no meritorious ground upon which an interference with the judgment and the order, or either, may be supported.

The judgment and the order are affirmed.

Burnett, J., and Finch, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 21, 1923.

All the Justices concurred.