STATE OF NORTH DAKOTA, Plaintiff, v. E. M. WALLA, Defendant.

(224 N. W. 211.)

Opinion filed March 20, 1929.

*Geo. S. Register,* State's Attorney, for plaintiff.

*Crum & Crum,* for defendant.

CHRISTIANSON, J. The defendant was indicted for forgery in the third degree by a grand jury in Burleigh county. He moved to set aside the indictment on the grounds:

(1) That the jury list from which the names of the grand jurors were drawn did not contain two hundred names as required by § 826, Comp. Laws 1913; but that said list contained only one hundred seventy-nine names.

(2) That the city commissioners of the City of Bismarck in selecting the names for the jury list, apportioned to that city by the county commissioners of Burleigh county, failed to comply with § 820, Comp.

Laws 1913 in this: they did not select from the names of the resident taxpayers of such city, three times as many names as were apportioned to the city and write each name so selected on a separate ticket and then cause such tickets to be folded and placed in a box or other receptacle, and thereupon select by lot from the tickets deposited in such box the proper number of names apportioned to the city of Bismarck; but on the contrary, that the city commissioners of Bismarck selected from the resident taxpayers of such city the exact number allotted to it by the board of county commissioners, to-wit; twenty-four names, and certified the same to the county auditor as the names of jurors selected by such city commissioners.

The trial court overruled the motion. Thereupon, on application of the attorneys for the prosecution and the attorneys for the defendant, the trial court halted all proceedings and certified to this court for determination (Comp. Laws 1913, § 7849B1, Supp.) the two questions raised by the motion.

The questions presented to this court for determination are:

(1) Does the fact that the grand jury panel was drawn from a box containing only 179 names, instead of 200 names, as provided by § 826, Comp. Laws 1913, invalidate the composition of the grand jury, and require that the indictment returned against the defendant be set aside, upon the motion made by him?

(2) Does the fact that the board of city commissioners of the city of Bismarck in selecting the names for the jury list, apportioned to that city, selected the names of the exact number of jurors so apportioned, instead of drawing them from a box or receptacle containing three times the number of names to be selected as prescribed by § 820, Comp. Laws 1913, render the grand jury subsequently drawn from the jury list of the county invalid, and require that the indictment returned by it against the defendant here be set aside upon his motion to that effect?

The answers to these questions will be found in the laws of this state relating to the selection of names for the jury list; the drawing and organization of a grand jury; the laws relating to challenges to a grand jury; and motions to set aside an indictment.

The following provisions of the Compiled Laws of 1913 provide for the preparation of the list of names of jurors:—

Section 817: "In each county in this state wherein terms of the district court are held the names of two hundred persons qualified to act as jurors shall be selected in the manner hereinafter provided, from which to draw the grand and petit jurors; provided, that if in any county there are not two hundred persons qualified to act as jurors then a less number, and the highest number possible, shall be selected. The board of county commissioners in each county, in which only a portion of the civil townships are organized, shall apportion to each of the organized townships and to each incorporated city and village in such county and to the unorganized portion of such county, as near as may be, its pro rata share of such names. The number of names to be selected from the portion of the county not organized into civil townships, and not embraced within the limits of any incorporated city or village, shall be selected by the board of county commissioners from the last annual tax list and furnished to the clerk of the district court of such county. In each county, in which all the townships are organized into civil townships, the board of county commissioners shall, as near as may be, apportion pro rata the number of names to be selected among the civil townships in their respective counties and among the incorporated cities and villages therein, if any. The names on the assessors' lists of the several townships, cities and villages for the preceding year shall be the basis for making such apportionment." Comp. Laws 1913, § 819.

Section 819: "Whenever the county commissioners of any county shall have made the apportionment mentioned in section 817, the county auditor shall forthwith notify the clerk of each township and village and clerk or auditor of each city of the apportionment of his township, city or village, and such clerk or auditor shall immediately thereafter cause to be posted in three public places in his township, city or village a notice that the board of supervisors of the township, or the board of aldermen or city council of the city, or the board of trustees of the village, as the case may be, will meet to draw the names of qualified jurors of the township, city or village to make up the grand or petit jurors' list for the county. Such notice shall state the time and place of such meeting within the township, city or village, designating a day not less than five nor more than ten days from the day of posting such notice." Comp. Laws 1913, § 819.

Section 820: "At the time and place mentioned in such notice the board of supervisors of the township, or the board of aldermen or the city council of the city, or the board of trustees of the village, as the case may be, shall meet and select from the names of the resident taxpayers of such township, city or village three times as many names as are apportioned to the township, city or village by the county commissioners, and the township, city or village clerk or auditor shall at such meeting write each name so selected on a separate ticket and shall also record the list of the names so written and selected in a book to be kept for that purpose. Such board shall then compare the names on such tickets with such recorded list of names to satisfy itself that such tickets are correct. The tickets shall then be folded, placed in a box or some other receptacle and shaken up; one of the members of the board shall then select by lot from the tickets in such box or receptacle the proper number of names so apportioned to his township, city or village, as the case may be; and the clerk or auditor shall then record in a book to be kept for that purpose such names in the order in which they were drawn." Comp. Laws 1913, § 820.

Sections 823 and 824, provide for the time, place and manner of drawing the jury panel; § 825 prescribes the duties of the clerk in issuing the venire.

Section 826 reads: "Such number of two hundred names shall at all times be kept full, when possible, by completing the number after each jury term of court; and at the end of each jury term of the district court the clerk shall make requisition upon the county commissioners for the furnishing of as many names as have been drawn so as to keep such list full. And at the subsequent meeting the board of county commissioners shall proceed to apportion as hereinbefore provided for making up the whole of such list, and the same proceedings shall be had as to such names so required, as are herein directed to be taken in making said list full, except that the posting of notices shall not be required, and that the board of supervisors of any township, the board of aldermen or the city council of any city, or the board of trustees of any village, need not be specially called to draw any such names, but may do so at its next regular meeting. A failure to comply with any of the provisions of this section shall not be ground for challenge of any jury, either grand or petit, or to the panel." Comp. Laws 1913, § 826.

According to the stipulation of counsel for the respective parties and the certificate of the trial judge the certified questions arose out of the following undisputed facts:

"On September 10, 1928, a petition containing 935 signers, was presented to Fred Jansonius, judge of the district court of Burleigh county, asking that a grand jury be summoned for the October term of district court. Of the petitioners, 604 were male signers, and the male signers alone were more than ten per cent of the total vote cast for Governor of the state at the last general election preceding the calling of said grand jury.

"On September 12, 1928, two days after the petition was presented, an order for the calling of a grand jury was filed. This order was signed by both of the judges of the district court of the Fourth Judicial District.

"The order of court above mentioned found that the number of names of the electors appearing on said petition was sufficient in law, and further stated that the judges of said court deemed the attendance of such a grand jury necessary for the due enforcement of the laws of the State of North Dakota.

"The order directed the clerk to summon a grand jury to appear at the regular October term of the district court, to convene on October 2nd, 1928. Following the June term of the district court of Burleigh county, the clerk's jury list contained 125 names, and that was the number of names in the jury box at that time. Thereafter the clerk of the district court filed a requisition with the county commissioners, calling for 75 names to make up the required 200, as required by § 822 of the Compiled Laws.

"At a subsequent meeting of the board of county commissioners, the board apportioned this number among the sub-divisions of Burleigh county. Twenty-four of the names were apportioned to the city of Bismarck, and the balance to the rest of the county among the various sub-divisions of the county.

"Between August 10th and August 27th, following the apportionment by the county commissioners, the clerk received 55 names, and at the time of the calling of the grand jury the jury list contained 179 names, and that was the number of names that were in the jury box at the time of the drawing of the grand jury.

"There are in Burleigh county a great many more than 200 persons who are qualified to act as jurors.

"That of the 55 new names put in said box since the June, 1928 term of the district court, 24 were from Bismarck, and the rest from districts outside of the city of Bismarck, some districts having failed to send in their quota, which accounts for the difference between 55 and the number requisitioned by the clerk—75.

"That the jury list and jury box from which the names of the grand jury—which found said indictment—was drawn, as made up under an apportionment made by the county commissioners of said county, as above stated.

"That the board of city commissioners of the city of Bismarck did not select three times as many names as was apportioned to the city by the county commissioners, and made separate tickets and record the list of names so written and selected, or place the same in a box or other receptacle, and select by lot from the tickets in such box the proper number of names so apportioned to said city; but, on the contrary, the board of city commissioners did select from the taxpayers the exact number allotted to it by the board of county commissioners, to-wit, 24, and certified the same to the county auditor.

"That the city commission for a period of ten years has selected the jurors apportioned to it by the county commissioners in that manner.

"That in at least one instance the board of township supervisors failed to select its jurors by placing in a box or receptacle three times the number allotted to it; but the clerk sent in the names of the jurors selected by the township board from the taxpayers.

"That none of the townships, cities or villages sent in more names than the number allotted to them.

"That within three days after the receipt of the order of the judges of the district court, directing the grand jury to be summoned, the clerk of the district court, county auditor, county treasurer and sheriff met at the office of the clerk of the district court. One of the officers, other than the clerk of court, then drew enough names out of the jury box to make up the number summoned to appear as grand jurors.

"The first 23 names drawn from such box were the ones summoned to appear as grand jurors for the October, 1928 term.

"Court was called to order and the grand jury empaneled on October

2nd, 1928, pursuant to the order of the judges of the district court—both judges were present.

"Before the jury was sworn, the court announced that challenges would be considered, either to the panel or individual jurors. No challenge was interposed. Thereupon the jury was separately questioned as to his qualifications. Twenty jurors qualified as to residence, age and citizenship.

"Thereupon the foreman was selected and oath administered to him; thereafter the other 19 were sworn and the empaneling of the jury completed. The jury was then instructed as to their duties as grand jurors."

At common law, grand as well as petit jurors were selected, summoned and returned by the sheriff, and the manner of their selection was a matter within his discretion. 28 C. J. p. 773; 17 Am. & Eng. Enc. Law, p. 10. A challenge to the panel was founded upon some partiality or default of the sheriff, or his under officer, or of the clerk who arrayed the panel. 28 C. J. pp. 788, 789; 17 Am. & Eng. Enc. Law, p. 1111. As an outgrowth of the severity of the then existing system of criminal law, there came into existence rules permitting an accused person to interpose almost innumerable technical objections to an indictment and to the organization of the grand jury which had returned it. As a result indictments were frequently set aside for purely technical reasons. 12 R. C. L. p. 1027.

Lord Hale once said "that the strictness required in indictments had grown up to be a blemish and inconvenience in the law and the administration thereof, and that more offenders escape by the overeasy ear given to exceptions to such indictments than by the manifestation of their innocence, and that the greatest crimes have gone unpunished by reason of these unseemly niceties." State v. Cooley, 72 Minn. 481, 71 Am. St. Rep. 502, 75 N. W. 730.

To obviate these common-law rules, statutes have been enacted in practically every jurisdiction in this country regulating the method of selecting and drawing grand jurors. 28 C. J. p. 773. Statutes have, also, been enacted specifically enumerating the defects in the selection, drawing or organization of a grand jury constituting grounds for a challenge to the panel, or to an individual grand juror, or for a motion to set aside an indictment. The object of the latter statutes was "to

put an end to most of the technical objections which theretofore embarrassed criminal prosecutions, and to reduce the administration of the criminal law, as far as constitutional limitations allowed, to a trial on the merits." 12 R. C. L. p. 1027. The statutes relating to the selection of names for a jury list, and the drawing of a jury panel from such list, were enacted for public reasons rather than for the benefit of any person accused of crime or for the benefit of any individual litigant. United States v. Greene (D. C.) 113 Fed. 695. The interest of the people in a governmental capacity in a jury panel is one thing and that of an individual accused of crime may be quite another. The people of a state and county are interested in the hearing or trial of all causes arising in their courts; the interest of an individual as such is restricted to some particular matter or cause to which he is a party or in which he has some personal concern. It is to the interest of every citizen, every taxpayer, that the selection of a qualified jury be facilitated in every instance. It is to their interest that, if possible, a grand jury panel be so constituted that it contain a sufficient number of grand jurors qualified to act in and dispose of every matter that may be submitted to such jury; and that a petit jury panel be so constituted that a sufficient number of petit jurors may be obtained therefrom to sit in every cause, civil and criminal, that may come before the court for trial by the jury at the term for which the jury is called. It was thought by the lawmakers that by providing for a distribution of the names on the jury list throughout the entire county, and the selection of such names by local officers in the manner prescribed, there would be greater probability of obtaining a panel from which qualified jurors could be obtained in the various matters and causes than by the selection of jurors by the method then in force; also, that the mode prescribed by the statute would tend to spread the burden of jury duty throughout the county (note in 10 Ann. Cas. 965), and preclude the officer summoning jurors from packing juries, or selecting jurors with reference to particular matters and causes likely to be submitted to them for determination. 31 C. J. p. 257. The legislature, however, recognized that the rights of an individual might be affected to his prejudice in some substantial manner by nonobservance of some of the statutory provisions relating to the composition of a jury panel, and so it provided that certain enumerated nonobservances shall constitute

grounds for a challenge to the panel, or for setting aside an indictment, upon the timely objection of the individual, whose substantial rights may be affected to his prejudice by such nonobservances. Comp. Laws 1913, §§ 10,639, 10,728, 10,791. The legislature further safeguarded the rights of individual litigants and of persons accused of crime by affording them the right and opportunity to challenge each member of the panel for certain enumerated causes,—which include every cause of general disqualification of a juror, as well as causes of disqualification of a juror in the particular matter or cause in which the challenge is interposed. Comp. Laws 1913, §§ 10,641, 10,791–10,810.

The basis of a challenge to a grand jury panel, or of a motion to set aside an indictment, is that something has been done or omitted to the prejudice of the substantial rights of the challenging or moving party. Hence, it is a general rule (where the grounds of such challenge or motion have not been enumerated by the legislature) that "a mere irregularity or informality in the procedure with regard to drawing, summoning and impaneling of the grand jury, by which an indictment is found, is not ground for quashing it, unless prejudice is shown to have been occasioned to the substantial rights of the accused." 31 C. J. p. 804.

When the legislature has prescribed regulations for the selection of the names for a jury list, the preparation of such list, and the drawing of the jury panel; and has further enumerated the nonobservances of such regulations that shall constitute grounds for challenge to the jury panel or grounds for setting aside an indictment, there is a legislative determination that the nonobservances so enumerated, and these alone, constitute an invasion of the substantial rights of the accused. It goes without saying that the legislature may dispense with the performance of any act which was not essential in the first instance. In short, the only limitations on legislative power to restrict the grounds on which an accused may assail the composition of a grand jury, which has re- turned an indictment against him, are the limitations of the constitution.

Where the legislature has prescribed the manner of selecting jurors such manner is, of course, exclusive. And where in addition thereto, the legislature has enacted other laws providing in what instances non- observance on the part of the officers charged with the duty of selecting

and drawing jurors shall constitute ground for challenge to the panel, or individual members, of a grand jury, or ground for a motion to set aside an indictment, it has impliedly declared its intention that non-observance in other particulars shall not constitute ground for such challenge, or ground for a motion to set aside the indictment. Hence, follows the well-settled rule that where the legislature has expressly enumerated the objections an accused may make to the composition or organization of a grand jury that has returned an indictment against him, the grounds of objection thus enumerated are exclusive. 28 C. J. pp. 788, 789; 10 Enc. Pl. & Pr. 586; 17 Am. & Eng. Enc. Law p. 1112; State v. Longstreth, 19 N. D. 268, 121 N. W. 1114, Ann. Cas. 1912D, 1317; State v. Lamphere, 20 S. D. 98, 104 N. W. 1038; State v. Forgraves, 32 S. D. 21, 141 N. W. 990; People v. Sacramento Butcher's Protective Asso. 12 Cal. App. 471, 107 Pac. 712; Kitts v. Superior Ct. 5 Cal. App. 462, 90 Pac. 977; People v. Collins, 60 Cal. App. 263, 212 Pac. 701; 14 Cal. Jur. pp. 74, 75. This rule applies with peculiar force in this state, as our Constitution expressly empowers the legislative assembly to "change, regulate or abolish the grand jury system." Const. § 8.

Our legislature has enacted laws regulating "the grand jury system." Among others, it has enacted statutes enumerating and restricting the grounds of challenge to an individual grand juror (Comp. Laws 1913, § 10,641); the grounds of challenge to the panel (Comp. Laws 1913, § 10,639), and the grounds for setting aside an indictment (Comp. Laws 1913, § 10,728).

Section 10,641, supra, enumerates seven different grounds for challenging an individual grand juror. The first six subdivisions relate to the general qualifications of the juror, and his personal interest in the particular matter or cause, and authorize a challenge in such cases. The last subdivision of the section authorizes a challenge on the ground "that a state of mind exists on his (the juror's) part in reference to the case, or to either party, which will prevent him from acting impartially and without prejudice to the substantial rights of the party challenging."

Section 10,639 Comp. Laws 1913 provides:

"A challenge to the panel may be interposed by either party for one or more of the following causes only:

1. That the requisite number of ballots was not drawn from the jury box of the county or subdivision.

2. That notice of the drawing of the grand jury was not given.

3. That the drawing was not had in the presence of the officers designated by law, or in the manner prescribed by law."

Section 10,728 Comp. Laws 1913 declares that an "indictment must be set aside by the court in which the defendant is arraigned, upon his motion, . . .

(1) When it is not found, indorsed and presented or filed as prescribed by this Code. Code of Criminal Procedure.

(2) When the names of the witnesses examined before the grand jury are not inserted at the foot of the indictment or otherwise attached thereon.

(3) When a person is permitted to be present during the session of the grand jury while the charges embraced in the indictment are under consideration, except as provided in § 10,666. Section 10,666, provides that the state's attorney may appear before the grand jury.

(4) When the defendant had not been held to answer before the finding of the indictment, on any ground which would have been good ground for challenge, either to the panel or to any individual grand juror."

The motion to quash the indictment here is based upon the fourth subdivision of § 10,728 supra. That is, it is based on the ground that inasmuch as the defendant had not been held to answer before the finding of the indictment he is entitled to move to set it aside on any ground which would have been a good ground for challenge to the panel. And it is claimed that noncompliance with §§ 820 and 826 supra, in the two particulars indicated, constitutes a good ground for challenge to the panel and, hence, is a proper ground for a motion to set aside the indictment.

As already indicated we are of the opinion that these contentions are not well-founded. The legislature has expressly prescribed the mode in which a grand jury shall be selected and drawn. It has also said that nonobservance by the officers charged with the duty of selecting and drawing the members of such jury shall, in some instances, constitute a ground for challenge to the panel or a ground for a motion to set aside the indictment. The nonobservances involved here do not

constitute either grounds of challenge to an individual grand juror, or to the grand jury panel; nor do they constitute grounds for a motion to set aside an indictment. State v. Lamphere, 20 S. D. 98, 104 N. W. 1038; 28 C. J. pp. 788, 789; 10 Enc. Pl. & Pr. p. 586; 17 Am. & Eng. Enc. Law, p. 1112; State v. Longstreth, 19 N. D. 268, 121 N. W. 1114, Ann. Cas. 1912D, 1317; State v. Forgraves, 32 S. D. 21, 141 N. W. 990; People v. Sacramento Butcher's Protective Asso. 12 Cal. App. 471, 107 Pac. 712; Kitts v. Superior Ct. 5 Cal. App. 462, 90 Pac. 977; People v. Collins, 60 Cal. App. 263, 212 Pac. 701; 14 Cal. Jur. pp. 74, 75. Section 826 supra, expressly provides that failure to comply with any of the provisions thereof "shall not be a ground for a challenge of any jury, either grand or petit, or to the panel." Having expressly enumerated the instances in which nonobservance shall be deemed such irregularity as to invalidate an indictment, if, and when, challenged by the accused at the time and in the manner prescribed by law, it must be assumed that the legislature intended that nonobservance in other particulars should not constitute a ground for challenge, or a ground for a motion to set aside an indictment.

This is not a case where a body of persons assumed to act as a grand jury without semblance of legal authority. On the contrary, it is undisputed that they did act with such authority. It is undisputed that the court, having authority to impanel a grand jury, issued an order in conformity with the statute directing that a grand jury be summoned; that jurors were thereupon drawn from the jury list of the county by the proper officers and summoned to attend at a term of said court; that the persons so called for duty as grand jurors were thereafter duly sworn and impaneled as a grand jury and charged by the court with their duties as such, and that the indictment involved here was returned by the body so drawn, summoned, sworn and impaneled. There is no contention that there was any fraud or corruption on the part of anyone in the selection, drawing or impaneling of the grand jury. There is no claim that a single juror was disqualified. The sole complaint is that there was nonobservance of certain statutory regulations by the officers charged with the duty of selecting names for the jury list of the county; but as we have already noted, the legislature has said by clear and unmistakable implication that the nonob-

servance complained of here constitutes no ground for setting aside an indictment.

It does not follow that because the legislature has provided that non-observance of certain statutory provisions relating to the selection of names for the jury list, and the drawing of a jury panel, shall not constitute a ground for challenge to the panel or for a motion to set aside the indictment, that the officers charged with the duties of selecting such names, preparing the list and drawing the jury are at liberty to disregard any of the statutory directions. The primary duty of such officers is to the state, and to the people as a whole. A performance of that duty requires a scrupulous obedience to every provision of law prescribing their official conduct. The legislature has clearly evidenced an intention that all the directions given by it as regards the manner of selecting the names on a jury list, the preparation of the list and the drawing of the jury, shall be followed by the public officers upon whom these respective duties are placed. The legislature has said: "If the board of county commissioners, township board of supervisors, the board of aldermen or city council of any city, or the board of trustees of any village shall wilfully neglect or fail to select and furnish to the clerk names of persons as hereinbefore provided, the person so offending may be fined by the court not less than five nor more than fifty dollars; and if any officer shall fail to perform any of the duties imposed upon him by this article, he shall be deemed guilty of contempt of court, and may be fined by the court not less than five nor more than fifty dollars, and if guilty of gross misconduct in office and contempt in disregarding the provisions of this article he may be imprisoned in the county jail not longer than thirty days." Comp. Laws 1913, § 832.

Every grant of power to a public officer or tribunal imposes a duty to use such power if, and when, the occasion prescribed for its use arises. The power thus granted to the district court implies a duty on the part of the court to exercise proper supervision over the jury list, the drawing of the jury panel, and matters incident thereto, and, if necessary, to use the power conferred, to the end that the regulations prescribed by the legislature may be carried out.

It follows from what has been said that both questions certified to this court must be and they are answered in the negative. The trial

court was correct in refusing to set aside the indictment upon either of the grounds stated in the motion. The case is remanded for further proceedings conformable to law.

BURKE, Ch. J., and BURR, and BIRDZELL, JJ., concur.

NUESSLE, J. I fully agree with the legal propositions enunciated in the foregoing opinion, but I doubt that the questions presented are such that they should be certified for determination by this court. See Union Ins. Agency v. Insurance Co. of N. A. 50 N. D. 606, 197 N. W. 225, and cases cited; Ullman v. Campbell, 51 N. D. 198, 199 N. W. 482.