**James RILEY, Jr., and Frank Marshall, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 22511.**

United States Court of Appeals Ninth Circuit.

May 28, 1969.

Rehearing Denied June 20, 1969.

---

William T. Healy (argued), Tucson, Ariz., for appellants.

Rubin Salter (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Jo Ann D. Diamos, Asst. U. S. Atty., Tucson, Ariz., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and McNICHOLS, District Judge.

McNICHOLS, District Judge:

Appellants, James Riley, Jr. and Frank Marshall (hereinafter referred to respectively as "Riley" or "Marshall") were each convicted by jury verdict on both counts of a joint two count indictment. The first count charged a conspiracy by the two men to receive, conceal and transport an illegally imported narcotic substance, i. e., heroin. The second count charged the receipt, concealment and transportation of the heroin all in violation of Sections 173 and 174, Title 21, United States Code. Concurrent ten year sentences were meted out.

The principal errors relied on in the order to be discussed are as follows:

1. That the trial court erred in refusing to suppress evidence obtained as the result of an unlawful arrest where no probable cause for arrest existed.

2.(a) That proof was lacking that appellants ever had possession of the narcotic contraband.

(b) That even if possession in appellant Marshall was proved, there was a lack of proof of possession on the part of appellant Riley.

3.(a) That in custody statements of appellant Riley were improperly admitted in evidence, the same being the fruit of an illegal arrest.

(b) That it was error for the trial court to fail to caution the jury, on his own motion, that Riley's statements could not be considered by the jury against Marshall.

4. That it was error to refuse to order the government to disclose the identity of an informer whose communications were relied upon in making the arrests.

5. That a fatal variance developed between the dates alleged in the indictment and those disclosed by the proof.

6. That the United States Attorney, during closing argument, was guilty of prejudicial misconduct warranting a mistrial.

A review of the facts leading up to the arrest of the appellants and of the occurrences immediately thereafter is required.

Nogales, Arizona is a relatively small town located adjacent to the border between the United States and the Republic of Mexico. Nogales, Sonora, Mexico is across the international border from Nogales, Arizona. As is true of many such border towns, the port of entry at Nogales is frequently utilized for the unlawful smuggling of narcotics from Mexico to the United States. Considerable surveillance by customs authorities in Nogales, Arizona is carried out.

In the middle of the month of May, 1967, during such a surveillance, the appellant Riley was observed by customs officers in the company of a known drug trafficker, one Billy Joe Campbell. On May 21, 1967, customs agents were advised by an informant, whose prior tips had been very reliable, that two Negro men, associates of Campbell, were negotiating in Nogales, Mexico with one Poncho Martinez to purchase a large quantity of heroin. Both appellants in this case are Negroes. A few days later the same informant advised that the two Negro men had made a purchase of heroin, had transported it to Chicago, and would return to Nogales, Arizona about June 5, 1967. The informant further advised that Martinez was going to another Mexican city to obtain an additional supply of narcotics and expected to meet the two Negroes in Nogales, Mexico on or about June 5, 1967.

On June 5, 1967, the appellants, with a Negro woman identified as Miss Stanley, registered in a motel in Nogales, Arizona. A surveillance of the appellants was es-

tablished. During the day of June 5, 1967, they rented two different rental cars in Nogales, made numerous telephone calls on a pay phone, and drove about the community. In the afternoon of that day, the appellants, with the woman companion, drove away from Nogales, Arizona toward the city of Tucson. The customs agent stopped appellants' car and searched the occupants. No contraband was found, but in searching appellant Riley, he was discovered to have approximately $5,000.00 in cash on his person. The surveillance continued and, at about 1:00 A.M. on June 6, 1967, the appellants and Miss Stanley reregistered at the same motel in Nogales, Arizona. They were seen again to make numerous phone calls and on several occasions one or the other would leave the motel in a taxicab. Finally, about 9:30 in the evening, the appellants and Miss Stanley left the motel in a taxi, went to the bus station where Miss Stanley boarded a bus, and the men then went on foot into Mexico. On June 7, 1967, the informant called the customs agent by telephone and advised that the two Negro males were in Nogales, Mexico waiting for Martinez to return. He described the men so that the officers easily recognized that the description matched that of the appellants. About 6:00 P.M. on June 7, 1967, the informant again called the customs officers and informed them that Martinez had returned to Nogales, Mexico and that appellants had made a purchase and had paid Martinez 50,000 pesos (about $4,000.00 in American money).

About 6:00 P.M. on June 7, 1967, appellants, first Riley and then a few minutes later Marshall passed through the Nogales port of entry on foot. The border inspection officers had been instructed to watch for them, report their return, but to let them pass without search.

Shortly thereafter appellants were observed by customs officers in a taxicab headed in the direction of Tucson, Arizona, a distance of sixty-seven miles from Nogales. The cab was followed to the Tucson bus depot where the appellants were arrested as they emerged from the taxi.

A cursory "patting down" search for weapons was made at the bus depot and the appellants placed in the back seat of a police car and transported to a state facility for a more complete search. An officer testified that there was nothing on the back seat of the police car when the appellants entered the car. While in the car, Marshall was observed to put his hand inside his shirt and move it toward the right rear of his person. When the appellants were removed from the police car, a package was observed on the seat which later was found to contain some five ounces of heroin.

Inside the building a search of the persons of the suspects revealed no contraband. Appellants were advised of their constitutional right to remain silent and to have counsel. Riley thereafter attempted to speak and was advised by an officer not to say anything. However, he persisted and asked, "Did those Mexicans turn me in?"

■ From the foregoing, it is abundantly clear that the officers had reasonable cause to arrest the appellants. The informer was one whose prior tips had been very reliable. The activities of the appellants had been such as to arouse the suspicions of the officers. At least one of them had been associated with a known narcotics dealer; they had followed a course of changing cars; they made an unusual number of phone calls; they carried a rather unreasonably large amount of cash.[1] All of these activities aroused the suspicions of the experienced peace officers. In addition to this, on the emer-

1. The knowledge regarding the possession of some $5,000.00 in cash had its source in the abortive search conducted on July 5, 1967, when appellants were stopped near Nogales, Arizona. The trial judge specifically found that the July 5 search was in fact an arre t and was based on reasonable cause. He concluded that the resultant search was "valid and lawful." These findings and the conclusions of law based thereon are not made the subject of attack by the appellants.

gence from Mexico, the appellants took a taxicab to make a trip of sixty-seven miles over a route where public bus transportation was available. It is to be re-remembered that all of these events occurred in a setting adjacent to the Mexican border where narcotics smuggling is prevalant. The appellants had just returned from Mexico where narcotics are known to be available. Details of the informer's report were independently corroborated by the officers. The informer had advised that the two Negro men were to arrive in Nogales c ı or about the 5th of June, 1967, and they did; he said they were in Nogales, Mexico waiting for the narcotics dealer, Martinez, to return, the officers knew the appellants to be in Mexico at the time. The appellants were similar in appearance to the men described by the informer as waiting in Mexico to make a purchase of narcotics. The informant advised that the sale had been made and a purchase price of $4,-000.00 paid. Appellants were known to have at least this amount of money available. Very shortly thereafter the appellants crossed into the United States and were traveling by taxi from Nogales to Tucson, itself an unusual action.

 Probable cause for arrest exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information prior to the arrest are sufficient to warrant a man of reasonable caution in believing that an offense has been or is being committed by a person or persons so to be arrested. McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Hollins v. United States, 9 Cir., 338 F.2d 227 (1964). Here the test of probable cause was amply met. The arrest was lawfully made with probable cause. It follows that the Court properly rejected the motion to suppress the evidence secured in a search incident to this lawful arrest.

 It is strenuously urged that proof of possession of the contraband by the appellants was not shown. Concededly proof of possession in this case must rely on circumstantial evidence. However, the circumstantial evidence here is substantial. No package was present on the back seat of the police car when Riley and Marshall were placed therein. When they were taken out the package was seen. Additionally, Marshall was observed to have put his hand into his shirt and move it toward the back of his person. Shortly after they were taken from the police car, Riley, apparently unable to contain himself, asked if "the Mexicans turned him in."

[5] It is too well established to merit argument that proof of possession of narcotics may be by way of either direct or circumstantial evidence. Rodella v. United States, 9th Cir., 286 F.2d 306 (1960).

 The further point is raised that, even though evidence might indicate possession by Marshall, no proof of possession by Riley is shown. However, possession may be sole or joint and two or more persons may have joint possession of a thing. Juvera v. United States, 9th Cir., 378 F.2d 433 (1967). In the instant case the appellants had been together for several days; had gone to and returned from Mexico together; were traveling together in a taxicab on a sixty-seven mile trip and additionally Riley's volunteered inquiry as to whether they had been turned in by certain Mexicans all indicate a joint venture and a joint possession of the heroin package. The jury was properly instructed on the law of possession. In upholding the jury verdict we must take the view of the evidence most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). We are satisfied that the record supports the tacit finding of joint possession of the contraband by the appellants.

 The next citation of error deals with the admission in evidence of statements made by Riley shortly after his arrest. This alleged error is based on a contention that the statements made were the fruits of an unlawful arrest. We have dealt with that question and reiter-

ate that the arrest was lawful. Consequently this alleged error is groundless. No contention was made that the statements were not voluntary. However, we should state that there was a full compliance with the teachings of *Miranda*, Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). The statements came not only after the *Miranda* warnings, but in the face of the advice of the officers not to talk.

■ As a second facet of the foregoing alleged error regarding the admission of Riley's post-arrest statements, on behalf of the appellant Marshall error is claimed in the purported failure of the trial judge to instruct the jury that such statements were admissible only against Riley. No specific instruction was requested and no objection to the failure to give such instruction was made. Under these circumstances this failure constitutes a bar to the raising of this question on appeal. Rule 30, Federal Rules of Criminal Procedure; Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Smith v. United States, 9th Cir., 390 F.2d 401 (1968).

Additionally, the trial judge did instruct the jury that each defendant was entitled to have his case decided from his own acts and statements and from other evidence in the case which was applicable to him.

■ Appellants do not argue this specific citation of error in their brief nor are any authorities cited in support of the claimed error. On balance we are not persuaded that plain error such as is contemplated by Rule 52(b) of the Federal Rules of Criminal Procedure exists.

In the pre-trial stage of the proceedings appellants sought to procure disclosure of the identity of the informer. The trial judge refused to order the government to name the individual and error was predicated on that refusal. The information received from the informer was, of course, only used in the preliminary proceedings before the judge on the motion to suppress. The evidence of information furnished by the informer dealt solely with the lawfulness of the arrest which in turn bore on the admissibility of the contraband found in the police car.

■ The so-called "informer's privilege" is in reality a privilege frequently granted to the government to withhold from disclosure the identity of persons who furnish police officials with information relative to violations of the law. The purpose of the privilege is to protect the government's sources of information and in this way facilitate law enforcement by the preservation of anonymity of individuals willing to furnish information. Such anonymity is felt to be necessary to protect informers from reprisal and to encourage citizens to report law violations in the interests of a well ordered society. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed. 2d 639 (1957). The necessary use of informers and consequent dependence on the privilege is markedly prominent in the enforcement of the narcotics laws.

■ The privilege is not absolute and must be granted or denied by the trial judge in the exercise of sound judicial discretion. As in the case before us, the question most frequently arises in a situation where the validity of an arrest and a consequent search and seizure of contraband or other physical evidence of law violation is challenged. An arrest, to be lawful, with or without warrant, must be based on probable cause to believe the person to be arrested has or is about to commit a crime. If the arrest was not lawful, the search and seizure incident to the arrest will be invalid and the evidence seized will be suppressed. Often the knowledge of the arresting officer on which he must base the requirement of reasonable cause has been gained in whole or in part from an informer. Appellants rely heavily on the teachings of the United States Supreme Court in *Roviaro*, supra, a leading case on the issue of the informer's privilege.

In *Roviaro*, the informant played an integral part in the entire alleged illegal activity of the accused. This is best

shown by the Court's own description of the situation, found at page 64, 77 S.Ct. at page 630 therein:

"This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. Moreover, a government witness testified that Doe denied knowing petitioner or ever having seen him before. We conclude that, under these circumstances, the trial court committed prejudicial error in permitting the Government to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure."

The case at bar is thus readily distinguishable from that of *Roviaro*. Here the charge was concealing and transporting a contraband narcotic and conspiring to do the same. The informer had nothing to do with the offense as such. The only issue here is as to the reasonable cause to make the arrest, not the ultimate issue of guilt or innocence.

The *Roviaro* court also discussed the line of cases where the legality of the search is in question and the communications of the informer are relied upon to establish probable cause. The writer of that opinion then criticized the practice of some courts in adopting the hard and fast rule requiring disclosure in such cases. The Court said at page 62, 77 S. Ct. at page 628:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors."

Recently the United States Supreme Court has had an opportunity to review and interpret the *Roviaro* holding. Mc-Cray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). The Court in McCray said of *Roviaro* at pages 311–312, 87 S.Ct. at page 1062:

"What *Roviaro* thus makes clear is that this Court was unwilling to impose any absolute rule requiring disclosure of an informer's identity even' in formulating evidentiary rules for federal criminal trials. Much less has the Court ever approached the formulation of a federal evidentiary rule of compulsory disclosure where the issue is the preliminary one of probable cause, and guilt or innocence is not at stake. Indeed, we have repeatedly made clear that federal officers need *not* disclose an informer's identity in applying for an arrest or search warrant. As was said in United States v. Ventresca, 380 U.S. 102, 108 [85 S.Ct. 741, 745, 13 L.Ed.2d 684], we have 'recognized that "an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant," so long as the magistrate is "informed of some of the underlying circumstances" supporting the affiant's conclusions and his belief that any informant involved *"whose identity need not be disclosed * * ** was 'credible' or his information 'reliable.' " Aguilar v. Texas, supra, [378 U.S. 108] at 114 [84 S.Ct. at 1514, 12 L.Ed.2d 723].' (Emphasis added.) (Citing additional cases). And just this Term we have taken occasion to point out that a rule virtually prohibiting the use of informers would 'severely hamper the Government' in enforcement of the narcotics laws. Lewis v. United States, 385 U.S. 206, 210 [87 S.Ct. 424, 17 L.Ed.2d 312].

"In sum, the Court in the exercise of its power to formulate evidentiary rules for federal criminal cases has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to de-

termine probable cause for an arrest or search * * *."

In *McCray,* the officers testified to the facts given them by the informant and that the informant had previously given reliable information about the narcotics violations. The Court then found that the officers had facts and circumstances within their knowledge and reasonably trustworthy information sufficient to warrant a prudent man in believing the individual involved was committing or had committed an offense. The Supreme Court affirmed, holding it was not error for the trial court to permit the withholding of the identity of the informer.

As indicated above, the facts of the instant case disclose a stronger case for probable cause than appear in the *McCray* factual statement. Here the informer involved had furnished information leading to twenty or more prosecutions for narcotics violations. His assistance in the narcotics law enforcement of the area was important. If his "cover was blown", his usefulness would end. He was a paid informer whose life would be jeopardized upon disclosure. On the other hand, the informer would not be a witness as to the guilt or innocence of the appellants, only as to the validity of the officers' purported knowledge going to make up probable cause for an arrest. On appellants' motion for an order disclosing the identity the Court was required to make a discretionary ruling.

Under the circumstances of this case the trial court properly weighed the issue and in his sound discretion struck a balance in favor of nondisclosure. We think the trial judge correctly determined the matter. Certainly there was no abuse of discretion in the holding.

It is contended that appellants were convicted of a different crime than that described in the indictment. This contention is based on an alleged fatal variance between the proof adduced at trial and the allegations of the indictment. Count One of the indictment charged a conspiracy offense commencing on or about May 26, 1967 and continuing to on or about June 7, 1967. At the trial certain evidence was brought out regarding occurrences on May 17, 1967 and May 18, 1967 which might have been considered to be part of the charged conspiracy. This is a variance of some nine days.

While appellants claim error based on this relatively minor time lapse, they cite no authority nor do they allege either surprise or prejudice. As a matter of fact, the evidence of the acts prior to the date mentioned in the indictment was disclosed at the suppression hearing held almost a month before the trial. Immaterial and nonprejudicial variance does not constitute reversible error. Baker v. United States, 9 Cir., 393 F.2d 604 (1968); also see Ledbetter v. United States, 170 U.S. 606, 18 S.Ct. 774, 42 L.Ed. 1162 (1898). The remaining alleged errors concern statements of the United States Attorney made during closing argument. Defense counsel moved for a mistrial after the government's portion of the argument. The trial judge denied the motion. We have examined the alleged offending language and find it to have been within the scope of fair comment. Contrary to appellants' contention, nothing was said which constituted any comment on the failure of the appellants to take the stand or testify. We find no error in the rejection of the motion for mistrial based on the argument of government's counsel.

We have examined the other items of alleged error and find that they are either generally repetitious of those herein discussed or are without merit.

On the whole the record reflects that the appellants were fairly tried and that the evidence of guilt was substantial. We perceive no demonstrable error and must therefore affirm.