562 P.2d 1108

**The STATE of Arizona, Petitioner,**

v.

**SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF PIMA, and the Honorable William E. Druke, Judge of the Superior Court, Respondents,**

**and**

**Keith Clark and Kimberly Clark, Real Parties in Interest.**

**No. 2 CA–CIV 2422.**

Court of Appeals of Arizona
Division 2.

Jan. 20, 1977.

Rehearing Denied Feb. 28, 1977.

Review Denied March 22, 1977.

Stephen D. Neely, Pima County Atty. by David R. Cole and Rhonda L. Idle, Deputy County Attys., Tucson, for petitioner.

John M. Neis, Pima County Public Defender by Michael J. Addis, Pima County Public Defender, Tucson, for real party in interest Keith Clark.

## OPINION

HOWARD, Chief Judge.

An order of the respondent court granting a motion to compel disclosure of the identity of a confidential informant is the subject of this special action. The State's position is that it was error to require disclosure where the informant's only role in the entire matter was to provide the law enforcement officers with sufficient information to constitute probable cause to search.

The respondent court, in granting the motion to disclose, reviewed the disclosure materials of the respective parties and found that the police officers had conducted a warrantless search and arrest because of information supplied by the confidential informant. It concluded therefrom that the following language of this court in *Resnick v. State*, 24 Ariz.App. 513, 540 P.2d 132 (1975), mandated disclosure:

"[W]here it is later shown that the law enforcement officer's arrival at probable cause was based on nothing, or just slightly more than a tip by a confidential informant, we can see that disclosure of the informant's identity is necessary in order that the foundation for the search and consequent arrest may be tested in a judicial determination." 24 Ariz.App. at 515, 540 P.2d at 134.

The disclosure material considered by the court included a police report which recited that on July 15, 1976, the officer stopped and detained the Clarks for questioning for transportation of heroin, possession of heroin, and possession of heroin for sale. The subjects were transported to the DPS office where they were searched for narcotics and when none were found, the subjects were released. The report recited that between July 12, 1976 and July 15, 1976, the agents were contacted by a confidential and reliable informant who stated that a subject Keith was going to deliver a large amount of heroin to a house in the 2nd Street and 4th Avenue area. The informant showed to an agent a white house at 4801 S. Calle Pilar where Keith lived. The informant further stated that Keith usually delivered the heroin in the white Volkswagen parked in the driveway, and that deliveries should be made on the 15th.

The report continues:

"At approximately 1130 hours surveillance of the residence began, and at approximately 1230 hours two adults and a child were observed getting into the white Volkswagen and leave the residence.

The Volkswagen went west on Irvington to Park Ave. and then south on Park to

the Circle K convenience market on Park Ave. At the Circle K a white male wearing Levi's and a long sleeve multi-colored tee-shirt was observed getting into the V.W. The V.W. drove east on the first street north of the Circle K, the V.W. reappeared at the Circle K dropped the white male subject off and then proceeded north on Park Ave. At Irvington the vehicle turned west to 6th Ave. The vehicle stopped at an office building just west of 6th Ave. on the south side of Irvington, all three subjects were observed entering the building. After a short while all the subjects got back into the vehicle. The vehicle then went north on 6th to Congress and went west on Congress °to the unemployment center were KEITH get (sic) out of the vehicle and KIM and the child remained in the vehicle. The vehicle left the unemployment center and went east on Congress to North 6th Ave. where the vehicle went north. The vehicle continued north on 6th Ave. to 6th Street, the vehicle went east on 6th St. turned south on 5th Ave. and stopped in a parking lot. The vehicle remained in the parking lot. The vehicle remained in the parking lot. The vehicle remained in the parking lot (sic) for a short while and then went northbound in an alley to 6th Street turned east on 6th and 4th Avenue. The vehicle went north on 4th Ave and at 4th Ave and University Drive agents stopped the vehicle.

Agents got the suspects out of their vehicle. Agents Carrizosa and Berrellez took custody of suspect KEITH and transported suspect back to the DPS office. Sgt. took custody of suspect KIM and the child and transported KIM back to the office. At the Tucson office the male suspect KEITH was strip searched by agent Nixon. The female was searched by two female employees of the DPS. The vehicle was also searched, no narcotics was (sic) found.

At the Tucson office KEITH stated that he had dealt with a subject BOB (RED) who lives on 2nd St. near 4th Ave. in the past, but had not dealt with him for a while. KEITH stated further that he

had someone else deal his dope for he was afraid to do it himself.

Because no narcotics was (sic) found suspects were released and their vehicle returned.

\* \* \* \* \* \*

On 7–18–76, at approximately 1335 hours, while agent CARRIZOSA was cleaning the state's undercover vehicle, Agent CARRIZOSA found a clear plastic bag, which contained aluminum wrappers. Prior to cleaning the state vehicle on Sunday 7–18–76, agent had cleaned the state vehicle three or four days before, and no narcotics were found in the vehicle.

The plastic bag was found on the right front passenger side where subject CLARK had been sitted (sic).

This undercover vehicle is assigned to Agent CARRIZOSA. The only ones that have been in this vehicle are Agents CARRIZOSA and BERRELLEZ, with the exception of subject CLARK.

The evidence was marked and turned into Property Locker # 6, pending transportation to the Phoenix Lab."

The disclosure materials also included lab reports which indicated that the clear plastic bag found in the agent's vehicle contained 5.18 grams of heroin and a fingerprint on one of the wrappers was identified as that of Keith Clark.

 Thus we see that the informant was neither a participant in nor an observer of the transaction. He merely pointed the finger of suspicion at the Clarks. Since the informant was not a material witness needed to establish the guilt or innocence of the Clarks, disclosure was not required under the doctrine set down in *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), and the cases following it. If the issue is not guilt or innocence but the question of probable cause for an arrest or search, an informant's identity need not be disclosed where the officers do not make an arrest until they have confirmed in their own minds that the information given by the informant was reliable. *McCray v. Illi-*

*nois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *Riley v. United States,* 411 F.2d 1146 (9th Cir. 1969).

■ Our analysis of the police report concerning the details of the "tip" and the corroboration of the details by the officers' independent observation leads us to conclude that the report establishes the informant's reliability. *State v. Penney,* 242 Or. 470, 410 P.2d 226 (1966); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). We therefore cannot say that the officers' arrival at probable cause was based on nothing or just slightly more than a tip by a confidential informant so as to require disclosure of the informant's identity. *Resnick,* supra. We hold, therefore, that disclosure of the informant's identity should not have been ordered.

The order of the respondent court directing such disclosure is hereby set aside.

HATHAWAY and RICHMOND, JJ., concurring.