**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Lonnie NORDQUIST, Defendant and Appellant.**

**Crim. No. 731-A.**

Supreme Court of North Dakota.

Aug. 3, 1981.

---

**4.** "The law does not condemn all influence, only undue influence." *Matter of Estate of*

*Wagner*, 265 N.W.2d 459, 464 (N.D.1978).

Robert G. Hoy, Asst. State's Atty., Fargo, for plaintiff and appellee State of North Dakota.

Kraemer, Jochim & Beauchene, P. C., Fargo, for defendant and appellant; argued by Clifford M. Jochim and Jonathan T. Garaas, Fargo.

VANDE WALLE, Justice.

Lonnie Nordquist appealed from a judgment of conviction for arson entered against him on September 19, 1980, in the district court of Cass County. We affirm.

The facts giving rise to Nordquist's conviction are these: On the evening of November 17, 1979, Nordquist and a companion, Robert Milligan, entered a bar and lounge in Fergus Falls, Minnesota, and found present William Marts, Marts's wife, Donna, Nordquist's ex-girlfriend, Bonnie Hanson, and Hanson's companion, Leon Englehart. Nordquist began making comments directed to Hanson and Englehart and ultimately directed an insult toward Donna Marts. Subsequently William Marts, who had known Nordquist prior to this incident, punched Nordquist and hauled him out of the bar into the parking lot to Nordquist's vehicle. Marts told Nordquist to leave, and while driving away Nordquist told Marts: "You are going to be sorry for this."

At approximately 6 a. m., Sunday, November 18, 1979, a fire alarm was turned in at the Fargo fire department. When members of the fire department responded they discovered a detached single-stall garage behind the home of William Marts engulfed in flames. Ultimately the garage and most of the contents, including a 1975 automobile, were destroyed by the fire. Because the garage burned more fiercely than a normal garage fire, the destruction was so complete that the fire department investigators were unable to determine exactly how the fire was started. However, it was determined that the fire started in the front area and inside the engine compartment of the automobile and that some type of flammable liquid accelerant was used to start the fire. On April 17, 1980, a grand jury convened in Fargo to hear testimony regarding what was suspected to have been arson in the destruction of Marts's garage. The grand jury heard testimony from Marts regarding his past relationship with Nordquist and the events which took place in Fergus Falls the evening before the fire. Also testifying was an arson investigator from the Fargo fire department. The investigator testified to the nature and destruction of the fire and gave his opinion that the fire was not of a normal type found in a garage.

The grand jury also heard testimony from Diane Gerszewski Castro, who had known Nordquist for six to seven years. Mrs. Castro testified that Nordquist, who had lived with her and her family several times over the years, had bragged more than once in the presence of her and members of her family that he had set fire to Marts's garage. Mrs. Castro also claimed that Nordquist had made threats to her regarding the testimony she was going to give to the grand jury.

Also testifying to the grand jury was Marion Gerszewski, the 17-year-old son of Diane Gerszewski Castro. He testified that he was presently living with Nordquist and that he never had heard Nordquist mention anything about the fire.

Finally, Nordquist's girlfriend at the time of the grand-jury hearing, Verna Schossow, testified to the grand jury. Schossow told the grand jury that while Nordquist had expressed to her that he wasn't disappointed about the fire in Marts's garage, he never indicated to her that he had anything to do with it. She also testified Nordquist had told her that after the altercation in Fergus Falls he and Milligan went to a truckstop until 3 or 3:30 a. m. and then to Milligan's home until approximately 10 a. m. on Sunday, November 18, 1979, at which time Nordquist arrived at Schossow's apartment in Fargo.

At the time of the grand-jury proceedings the State had at its disposal police reports which reflected that Nordquist, Robert Milligan, and his mother, Marcella Milligan, had given information to a Fargo police officer to the effect that Nordquist and Robert Milligan were sleeping at the Milligan residence during the time of the fire at Marts's garage. These reports were not a part of the grand jury's consideration.

On April 22, 1980, the grand jury issued an indictment charging that Nordquist had committed arson in violation of Sections 12.1–21–01 and 12.1–03–01, N.D.C.C. Prior to trial, Nordquist moved the trial court to dismiss the indictment on the ground of insufficient competent evidence. That motion was denied. Subsequently a trial took place and resulted in Nordquist's conviction.

Nordquist raises four issues on this appeal:

1. Whether or not the indictment was defective because the evidence before the grand jury did not demonstrate beyond a reasonable doubt that Nordquist committed the crime charged.

2. Whether or not the indictment was defective as a result of the grand jury's failure to order and the State's failure to provide exculpatory evidence.

3. Whether or not Nordquist's right against self-incrimination was violated by a comment made by the prosecutor to prospective jurors during voir dire.

4. Whether or not the trial court erred in refusing to instruct the jury that the State must prove the nonexistence of a defense.

I

Before we consider Nordquist's first contention we must determine whether or not there is merit to the State's assertion that the sufficiency of the evidence upon which an indictment is based is not a matter which is reviewable by a court.[1]

In support of its proposition the State relies heavily upon *Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), and *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910). In *Holt*, the Supreme Court was asked to decide whether or not an indictment should be quashed because it was supported in part by incompetent evidence. In *Costello*, the Court was asked to decide whether or not a defendant would be required to stand trial and a conviction could be sustained where only hearsay evidence was presented to the grand jury which indicted him. In both cases the Court rejected the challenge to the indictment. In *Costello* the Court explained its position when it stated:

"If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resultant delay would be great indeed. The result would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, [footnote omitted] like an information drawn by the prosecutor, is valid on its face, is enough for trial of the charge on the merits. The Fifth Amendment requires nothing more." 350 U.S. at 363, 76 S.Ct. at 408–409, 100 L.Ed. at 402–403.

The petitioner in *Costello* went on to invite the Court, notwithstanding the lack of such a requirement in the Fifth Amendment, to use its Federal judicial supervisory powers to fashion a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence. The Supreme Court declined the invitation and in doing so commented:

"It could run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered

---

1. The State did not make this assertion in opposition to Nordquist's motion to dismiss the indictment prior to the trial. The trial court found that there was sufficient evidence to support the indictment and denied Nordquist's motion.

by technical rules. Neither justice nor the concept of a fair trial requires such a change. In a trial on the merits, defendants are entitled to strict observance of all the rules designed to bring about a fair verdict. Defendants are not entitled, however, to a rule which would result in the interminable delay but add nothing to the assurance of a fair trial." 350 U.S. at 364, 76 S.Ct. at 409, 100 L.Ed. at 403.

While the Supreme Court's reasoning in *Costello* may sound persuasive, it must be kept in mind that the Court rested its decision on the Fifth Amendment to the United States Constitution. That Amendment provides, in pertinent part:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, . . ."

The Court in *Costello* expressed its belief that the grand jury, as provided for in the Fifth Amendment, was intended to operate in the same manner as it had in England where its historical roots were deeply embedded. The Court stressed the independence with which the grand jury in England had operated and particularly its immunity from the scrutiny and control by the Crown or judges. In light of this history the Court concluded that the Fifth Amendment's bare reference to the grand jury was a sign that the method of operation of a grand jury at the time of the framing of the Constitution was to stay intact and remain free of judicial encumbrances, thus the result that Federal grand-jury indictments may not be challenged on the ground of insufficiency of evidence.

■ It is a topic of little debate that the States are "independently responsible for safeguarding the rights of their citizens." *People v. Brisendine*, 13 Cal.3d 528, 551, 119 Cal.Rptr. 315, 330, 531 P.2d 1099, 1114 (1975). In this regard a State may provide its citizens greater protection than the safeguards guaranteed in the Federal Constitution. *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *State v. Mat-*

*thews*, 216 N.W.2d 90 (N.D.1974). It is in this light that we read this State's constitutional provision regarding grand juries:

"Unless otherwise provided by law, no person shall, for a felony, be proceeded against criminally, otherwise than by indictment, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger. In all other cases, offenses shall be prosecuted criminally by indictment or information. The legislative assembly may change, regulate or abolish the grand jury system." Art. I, Sec. 10, N.D. Constitution.[2]

It is clear that, like the Fifth Amendment to the United States Constitution, considered in *Costello*, Article I, Section 10, of the North Dakota Constitution does not require that a defendant be allowed to challenge the sufficiency of the evidence considered by a grand jury. However, Article I, Section 10, of the North Dakota Constitution, unlike the Fifth Amendment to the United States Constitution, expressly provides that the legislative body in this State "may change, regulate or abolish the grand jury system." Thus this State may—and, we believe, has—through Chapter 29–10.1, N.D.C.C., established a greater measure of protection for a person who is the target of a grand-jury investigation than that afforded by the Federal Constitution.

The regulation of the grand-jury system adopted by the Legislature is found at Chapter 29–10.1, *Grand Jury*, N.D.C.C. Nordquist bases his challenge on the belief that the indictment against him was returned by the grand jury in violation of Section 29–10.1–26 and Section 29–10.1–33, N.D.C.C. Section 29–10.1–26 states:

"*Reception of evidence.—*

"1. Subject to subsection 2 of this section, the grand jury shall receive only evidence which is:

"a. Given by witnesses produced and sworn before the grand jury;

---

**2.** Our reference to specific provisions of the Constitution is to those sections as numbered by the Legislative Council pursuant to the authority of Section 46–03–11.1, N.D.C.C.

"b. Furnished by writings, material objects, or other things perceivable through the senses; or

"c. Contained in a deposition or transcript that is admissible under the rules of criminal procedure.

"2. The grand jury shall receive only evidence that would be admissible over objection at the trial of a criminal action, but the fact the evidence inadmissible at the trial was received by the grand jury does not render the indictment void if sufficient competent evidence to support the indictment was received by the grand jury."

Section 29–10.1–33 states:

"*When indictment ought to be found.*—The grand jurors shall find an indictment charging a person with the commission of an offense when all the evidence before them, taken together, is such as in their judgment would warrant a conviction by the trial jury."[3]

The State argues that Sections 29–10.1–26 and 29–10.1–33 are not available to a defendant as a ground for challenging an indictment because Chapter 29–10.1 expressly provides for only one ground upon which the defendant may challenge an indictment and that ground is found at Section 29–10.1–10, N.D.C.C. That section states:

"*Challenge to panel after indictment presented.* At any time prior to pleading to the indictment, the person against whom an indictment has been found and presented may move the court to dismiss the indictment upon the ground that the jurors were not selected or impaneled according to law."

The State concludes that this single express ground upon which a defendant may challenge an indictment demonstrates that the Legislature had no desire to alter the historical prohibition against a court's "going behind" an indictment to review the evidence which brought it about. We approach the State's assertion with an eye

toward the well-known rule of statutory construction that where statutes relate to the same general subject matter, or are in pari materia, every effort should be made to give meaningful effect to each without rendering one or the other useless. *State v. Mees*, 272 N.W.2d 61 (N.D.1978).

The State's conclusion rests partially on the proposition that where the Legislature has expressly enumerated some things (i. e., the grounds on which a challenge to an indictment may be launched), it does so to the exclusion of all others. The State relies on *State v. Walla*, 57 N.D. 726, 224 N.W. 211 (1929), as support for this proposition. However, while the statutory rule of construction that the express inclusion of some items carries with it the implied exclusion of others, is well known, this court clarified the application of that rule in *Juhl v. Well*, 116 N.W.2d 625 (N.D.1962). In *Juhl* we concluded that the rule that expression of one thing in a statute excludes all others should be applied only where it appears to point to legislative intent and it does not apply if there is some special reason for mentioning one thing and no reason for mentioning the second. 116 N.W.2d at 628. Because of the State's reliance on *Walla, supra,* we will view that case in light of the conclusion we reached in *Juhl.* In *Walla* it was determined that the nonobservance of certain statutory provisions relating to the selection of names for a grand-jury list, and a drawing of a grand-jury panel, did not fall within those nonobservances which had been statutorily enumerated as grounds for a challenge to the panel or for a motion to set aside the indictment. More germane to the issue at hand was the discussion in *Walla* of the special reason for enumerating the grounds upon which a challenge to an individual grand juror, to the grand-jury panel, or to the indictment could be based. While considering the description of the special reasons for enumerating the challenges set forth in *Walla*, it is important to keep in mind that the challenges referred to

---

**3.** As will be discussed, Nordquist claims that Sections 29–10.1–26 and 29–10.1–33, when read together, require proof beyond a reasonable doubt to exist before a grand jury may issue an indictment, and that this standard was not met by the grand jury which indicted him.

relate only to the selection, drawing, or organization of a grand jury. The relevant discussion in *Walla* was:

"At common law, grand as well as petit jurors were selected, summoned and returned by the sheriff, and the manner of their selection was a matter within his discretion. [Citations omitted.] A challenge to the panel was founded upon some partiality or default of the sheriff, or his under-officer, or the clerk who arrayed the panel. [Citations omitted.] As an outgrowth of the severity of the then-existing system of criminal law, there came into existence rules permitting an accused person to interpose almost innumerable technical objections to an indictment and to the organization of the grand jury which had returned it. As a result indictments were frequently set aside for purely technical reasons. [Citation omitted.]

"Lord Hale once said 'that the strictness required in indictments had grown up to be a blemish and inconvenience to the law and the administration thereof, and that more offenders escaped by the overeasy ear given to exceptions to such indictments than by the manifestation of their innocence, and that the greatest crimes have gone unpunished by reason of those unseemly niceties.' [Citation omitted.]

"To obviate these common-law rules, statutes have been enacted in practically every jurisdiction in this country regulating the method of selecting and drawing grand jurors. [Citation omitted.] Statutes have, also, been enacted specifically enumerating the defects in the selection, drawing or organization of a grand jury constituting grounds for a challenge to the panel, or to an individual grand juror, or for a motion to set aside an indictment. The object of the latter statutes was 'to put an end to most of the technical objections which theretofore embarrassed criminal prosecutions, and to reduce the administration of the criminal law, as far as constitutional limitations allowed, to a trial on the merits." 57 N.D. at 734, 735, 224 N.W. at 214, 215.

■ Thus, because of the multitude and variety of technical challenges once leveled at the formation of the grand jury, a special reason existed for enumerating the grounds for challenging a grand juror, the grand-jury panel, or the indictment returned by the defectively formed grand jury. We believe there is no reason that nonobservance of the evidence requirements found in Sections 29–10.1–26 and 29–10.1–33 need be expressly enumerated as grounds upon which a challenge to an indictment may rest. Indeed, such a requirement would render worthless the obvious purposes of these sections. We agree with the determination of the Minnesota Supreme Court that all statutes are understood to carry with them—by implication, if not by express terms—all provisions necessary to effectuate their object and purpose. *Sullivan v. Credit River Township*, 299 Minn. 170, 217 N.W.2d 502 (1974). The purpose of the two sections in question is quite clearly to protect the citizens of this State from the burdens of defending themselves against criminal charges unless sufficient competent evidence indicates that a citizen or citizens must be held to answer for an offense. To effectuate that purpose and protect against abuses of the secrecy inherent in grand-jury proceedings a determination by the court as to whether or not the statutory standard has been met is implicit in Sections 29–10.1–26 and 29–10.1–33. Moreover, this court will not conclude that the Legislature in enacting Sections 29–10.1–26 and 29–10.1–33 intended them to be without meaning. Statutes are to be construed in a way which does not render them worthless and because the law neither does nor requires idle acts we will not assume that the Legislature intended that these sections be useless rhetoric. Section 31–11–05(23), N.D.C.C.; *Hermanson v. Morrell*, 252 N.W.2d 884 (N.D.1977).

Finally, the State argues that no prejudice attaches to an indictment and, beyond that, there is no reason to allow a defendant who has been convicted of the offense for which he had been indicted to stand before this court to challenge the sufficien-

cy of the evidence which led to the indictment. A defendant may not raise a challenge such as Nordquist has raised here for the first time after his conviction. See Rule 12(b)(2), N.D.R.Crim.P.; *State v. Moore*, 286 N.W.2d 274 (N.D.1979). However, Nordquist presented a motion to dismiss the indictment in this case prior to his trial. Further, whether or not an indictment prejudices a defendant, we believe that an indictment returned in violation of the sections being considered here may impose heavy burdens on an innocent party. In this respect we believe that this issue goes beyond Nordquist's situation and we are reminded of the concern expressed by Justice Botts through his dissent in *State v. Chance*, 29 N.M. 34, 54, 221 P. 183, 190 (1923):

> "... I cannot close my eyes to the fact that it is only those cases of this nature where there has been a conviction which find their way here, and that those citizens who may be unlawfully indicted through suspicion, rumor, malice, public clamor, personal influence, or worse means, and who may thereafter have been acquitted by a petit jury, possibly even by direction of the court, in the meantime, will have been compelled to suffer the suspense, humiliation, and expense of a trial, the risk of perjury or error, and the disgrace of imprisonment or the burden of bail."

In light of our discussion above we recognize that an assertion that the evidence heard by a grand jury was not sufficient to support an indictment serves as a limited ground for challenging the indictment. Having said that, however, we cannot agree that the proper procedure by which to obtain a review of the order of the district court denying the motion to dismiss the indictment[4] is to raise that issue on appeal from the judgment of conviction, particularly where the defendant has not challenged the sufficiency of the evidence introduced at the trial itself.[5] There would

be little logic in reversing a conviction because the evidence necessary to support an indictment was lacking when, on appeal, it is conceded that the evidence necessary for conviction was introduced at the trial. Rather, we believe the proper procedure is to challenge the order of the court denying the motion to dismiss the indictment by application to this court for a writ of certiorari. Chapter 32–33, N.D.C.C.; *State v. Morrissey*, 295 N.W.2d 307 (N.D.1980). Such a procedure will better protect the right of the defendant and will also prevent a determination of meaningless issues on an appeal from the judgment of conviction. Despite the fact that we believe the request to this court to review the assertion that the evidence was insufficient to support the indictment comes too late, we realize this is a case of first impression for this court and therefore we will discuss Nordquist's particular challenge.

## II

Nordquist's argument is essentially this: Section 29–10.1–26(2) requires the prosecuting attorney to present, and the grand jury to consider, only evidence which would be admissible at a trial; Section 29–10.1–33 prohibits a grand jury from finding an indictment unless the totality of evidence (i. e., admissible evidence) would bring a conviction by a trial jury; Section 12.1–01–03 allows the trial jury to convict only when each element of the offense is proved beyond a reasonable doubt; therefore, a grand jury, before finding an indictment, must have before it proof beyond a reasonable doubt that the proposed subject of the indictment committed the offense. We cannot agree with Nordquist's analysis.

At the outset, we believe that had the Legislature intended to establish proof beyond a reasonable doubt as a standard for finding an indictment, it would have expressly stated so just as it did in Section 12.1–01–03 regarding the standard to be

---

4. The order denying Nordquist's motion was not appealable. See *State v. Johnson*, 142 N.W.2d 110 (N.D.1966).

5. We note that Nordquist did not argue to the trial court, nor does he argue before us, that his conviction rests on insufficient evidence.

met for a conviction. We will not deviate from the rule of statutory construction that legislative intent in enacting a statute must first be sought from the language of the statute. *Apple Creek Tp. v. City of Bismarck*, 271 N.W.2d 583 (N.D.1978). In this regard, we believe Nordquist has ignored important elements of Sections 29–10.1–26(2) and 29–10.1–33. In the former section the Legislature has expressly declared that inadmissible evidence may come before a grand jury without rendering an indictment void so long as sufficient admissible evidence supports it. While Nordquist does not dwell on an allegation that inadmissible evidence was considered by the grand jury, we will not allow that portion of the statute to be disregarded by Nordquist in his effort to rely on the first portion of Section 29–10.1–26(2) as the initial building block in analogizing a grand-jury investigation to a criminal trial.

▮ Regarding Section 29–10.1–33, Nordquist elects to overlook what we believe to be significant language. As to when grand jurors shall find an indictment, that section states:

"... when all the evidence before them, taken together, is such as *in their judgment would warrant* a conviction by the trial jury." [Emphasis supplied.]

We believe that language reflects the Legislature's intent to allow the grand jury to determine whether or not the evidence put before it pursuant to Section 29–10.1–26 is satisfactory for the purpose of directing, in good faith, an accusation toward the person who is the subject of the indictment and which, in the jurors' minds, could withstand the test of a trial. Furthermore, the application of the rule at Section 1–02–02, N.D. C.C., that words are to be understood in their ordinary sense, leads us to conclude that the word "warrant," as used in Section 29–10.1–33, is not synonymous with the phrase "make certain." [6] Finally, we believe this conclusion is supported by reference to another statute, Section 29–01–

13(2), N.D.C.C., which defines the term "indictment" as follows:

"2. An 'indictment' is an *accusation* in writing presented by a grand jury to a competent court charging a person with a crime or public offense; ..." [Emphasis supplied.]

Thus the grand jury's function is to determine whether or not an accusation, not a conviction, is warranted.

▮ As this court observed in *State v. Walla, supra*, the basis for any challenge to an indictment is that something has been done or omitted to the prejudice of the substantial rights of the challenging party. In the instant case, although at one point he argues that the grand jury transcript reveals "a complete lack of evidence as to essential elements constituting arson," Nordquist more generally argues that his rights were prejudiced because the evidence before the grand jury was inadmissible in nature and that even if it had been admissible it could not establish beyond a reasonable doubt that he committed the crime charged. We have determined that such a standard is not required to be met before an indictment may be found. Further, our review of the grand-jury transcript leads us to conclude that the panel had before it sufficient competent evidence, such as the testimony of Mrs. Castro that Nordquist had spoken to her and her family of setting the fire and the circumstantial evidence regarding the incident at Fergus Falls on the evening prior to the fire, from which it could conclude that an accusation that Nordquist intentionally set fire to Marts's garage was warranted and that such accusation should be put to the test of a trial.

### III

▮ Nordquist's next contention is that his motion to dismiss the indictment should have been granted because the grand jury violated Section 29–10.1–27, N.D.C.C. That section states:

6. Webster's New World Dictionary, 2d College Ed., 1980, defines "warrant" as: "1. a) authorization or sanction, as by a superior or the law/ b) justification or *reasonable grounds* for some act, course, statement, or belief ..." [Emphasis supplied.]

"The grand jury shall weigh all the evidence submitted to it, and when it has reason to believe that there is exculpatory evidence within its reach, it shall order the evidence to be produced, and for that purpose may require the state's attorney or prosecutor to issue process for the production of such evidence."

The essence of Nordquist's argument regarding this issue is that a reading of Chapter 29–10.1 reveals that the State's Attorney or prosecutor is substantially in control of what evidence is and is not placed before the grand jury. He contends that whether or not the grand jury will have "reason to believe that there is exculpatory evidence within its reach" is contingent largely upon what evidence the State's Attorney chooses to provide to the grand jury. He reasons that while the grand jury has a statutory duty to be alert to the fact that exculpatory evidence may exist and to order its production, that duty and Section 29–10.1–27 itself may be subverted by a State's Attorney who chooses to withhold evidence which is exculpatory in nature. This is what Nordquist claims happened in the instant case. We agree with Nordquist that a fair reading of Section 29–10.1–27 imposes an implicit duty upon the State's Attorney or prosecutor to play an active role in facilitating the purpose of that section. However, this conclusion does not dispose of the issue before us.

The issue is not whether evidence exculpatory to Nordquist was withheld from the grand jury;[7] rather, it is whether or not the indictment should have been dismissed because the integrity of the grand jury was impaired. See *Commonwealth v. McJunkin*, —— Mass.App. ——, 418 N.E.2d 1259 (1981), and the cases cited therein. While we believe that it would have been proper for the State's Attorney to provide to the grand jury the police reports regarding Nordquist's alibi, we are not inclined to conclude that their omission from the grand jury's

consideration constitutes a violation of Section 29–10.1–27, which requires a dismissal of the indictment. The presence of the police reports would not necessarily have precluded the grand jury from arriving at a decision to indict Nordquist. Moreover, our review of the transcript of the grand-jury proceedings leads us to conclude that Nordquist's unequivocal assertion that the grand jury violated Section 29–10.1–27 is not warranted. Verna Schossow, Nordquist's girlfriend of two years, testified to the grand jury that Nordquist had appeared at her apartment at approximately 10 a. m., Sunday, November 18, 1979. Schossow informed the grand jury that Nordquist had told her at that time of his activities on the previous night, including his encounter with Bill Marts. At that point in her testimony the following exchange between a grand juror and Schossow took place:

"A GRAND JUROR: Did he say what he did after the argument?

"THE WITNESS: Uh, after that they went to a truck stop where they said they were there till about 3:30 or 3:00 or 3:30 in the morning.

"A GRAND JUROR: And then?

"THE WITNESS: He drove back to Fargo where they stayed at Bob Milligan's until he came up to visit me on Sunday morning."

Thus the grand jury had testimony before it which tended to exculpate Nordquist. Moreover, that evidence was the same (i. e., the alibi) as that reflected in the police reports.

We see no reason to establish a requirement that would force the grand jury to endlessly pursue all exculpatory evidence which may exist. We do not believe that the State's Attorney's failure to produce the police reports served to prejudice Nordquist nor do we believe that the grand jury can be said to have violated Section 29–10.-1–27.

---

7. The State does not deny that the police reports reflecting the assertions by Nordquist, Marcella Milligan, and Robert Milligan that

Nordquist was asleep at the Milligan home at the time of the fire were not a part of the grand jury's consideration.

## IV

Relying on the Fifth Amendment to the United States Constitution,[8] Article I, Section 12, of the North Dakota Constitution,[9] Section 29–21–11, N.D.C.C.,[10] Rule 512, N.D.R.Ev.,[11] and language from *State v. Marmon*, 154 N.W.2d 55 (N.D.1967),[12] Nordquist claims that the trial court should have granted his motion for a mistrial because of a statement made by the prosecuting attorney to prospective jurors on voir dire.

Nordquist has set forth a well-supported argument that references by the prosecution to a defendant's silence are prohibited. However, Nordquist launches into this area without first demonstrating that such a reference was ever made in this case; rather, he simply restates the prosecutor's allegedly violative statement and proceeds to his conclusion.

Although the record does not reflect the precise words used by the prosecutor, both sides agree that during voir dire the prosecutor asked prospective jurors something to this effect:

"Is there anybody who believes that the State must come forward with a confession from the defendant in every case?"

Nordquist now asserts that because of this statement he was forced to testify at his own trial.

Several Federal courts have enunciated a standard to be used in determining whether or not a particular comment is impermissible with regard to a defendant's right against self-incrimination:

"Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Whitehead*, 618 F.2d 523, 527 (4th Cir. 1980), citing *United States v. Anderson*, 481 F.2d 685, 701 (4th Cir. 1973), *affirmed* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974); *United States v. Sanders*, 547 F.2d 1037 (8th Cir. 1976); *United States v. Williams*, 521 F.2d 950 (D.C.Cir.1975); *Riley v. United States*, 411 F.2d 1146 (9th Cir. 1969).

Applying this standard we cannot conclude that the statement by the prosecutor can accurately be characterized as an impermissible comment on Nordquist's right against self-incrimination. This is true especially where, as here, at the time of the statement there was no way by which the prosecutor could know whether or not Nordquist was going to take the stand in his own defense. *State v. Marmon, supra.* The comment at issue, on its face, reflects that the prosecutor was making reference to all criminal cases in an attempt to determine whether

8. That Amendment states, in pertinent part:
    "No person . . . shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; . . ."

9. The pertinent language of Article I, Section 12, is identical to that of the Fifth Amendment.

10. Section 29–21–11, N.D.C.C., states:
    "Defendant witness in own behalf.—In the trial of a criminal action or proceeding before any court or magistrate of this state, whether prosecuted by information, indictment, complaint, or otherwise, the defendant, at his own request and not otherwise, shall be deemed a competent witness, but his neglect or refusal to testify shall not create or raise any presumption of guilt against him. Nor shall such neglect or refusal be referred to by any attorney prosecuting the case, or considered by the court or jury before whom the trial takes place."

11. Rule 512, N.D.R.Ev., states, in pertinent part:
    "(a) *Comment or inference not permitted.* The claim of a privilege, whether in the present proceeding or upon a prior occasion, is not a proper subject of comment by court or counsel. No inference may be drawn therefrom.
    "(b) *Claiming privilege without knowledge of jury.* In Jury cases, proceedings shall be conducted, to the extent practicable, so as to facilitate the making of claims of privilege without the knowledge of the jury."

12. The language relied upon declares:
    ". . . our law specifically prohibits the prosecution from making any reference to the failure of a defendant to take the stand." *State v. Marmon*, 154 N.W.2d 55, 59 (N.D.1967).

or not prospective jurors believed that the State must produce, either through the defendant's testimony or through a written confession, evidence that the defendant committed the crime with which he had been charged. This we do not see as an objectionable inquiry.

## V

Nordquist's final contention is that he was deprived of due process of law because the trial court refused to instruct the jury according to one of his requested jury instructions. The particular instruction which Nordquist had requested states:

> "Elements of an offense when used in these instructions means: (a) the forbidden conduct; (b) the attendant circumstances specified in the definition and grading of the offense; (c) the required culpability; (d) any required result; and (e) the nonexistence of a defense as to which there is evidence in the case sufficient to give rise to a reasonable doubt on the issue."

This requested instruction adopts the language set forth in the second half of Section 12.1–01–03(1), N.D.C.C.

We cannot agree with Nordquist. The trial court gave the jury the following instruction:

> "If a person who is not at the place where a crime was committed at the time of its commission is later charged with having been present and having committed or taken part in committing the crime, his absence from the scene of the crime, if proved, is a complete defense called an alibi.

> "The defendant in this case has introduced evidence tending to prove that he was not present at the time and place he is alleged to have committed the offense for which he is on trial. If, after a consideration of all the evidence, you have a reasonable doubt as to whether the defendant was present at the scene of the crime at the time the crime was committed, he is entitled to an acquittal."

We believe that this instruction adequately informed the jury as to the law applicable to the case. Even if Nordquist's requested instruction was appropriate, our position on this matter is clear:

> "We have repeatedly held that instructions of the trial court must be considered in their entirety and if the whole charge, when considered together, correctly advises the jury as to the law applicable to the case, there is no error even though the requested instruction was a correct statement of the law." *Armstrong v. Miller*, 189 N.W.2d 688, 693 (N.D.1971).

Our review of the record satisfies us that the jury in the instant case received adequate instructions regarding the State's burden of proof.

The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON, SAND and PEDERSON, JJ., concur.